# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-3014

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Tony Phillips, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 16, 2012
Filed: June 4, 2012

_____

Before WOLLMAN and COLLOTON, Circuit Judges, and HICKEY,[1] District Judge.

_____

WOLLMAN, Circuit Judge.

Tony Phillips entered a conditional guilty plea to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Phillips appeals his conviction, arguing that the district court[2] erred in denying his motion to suppress evidence. We affirm.

_____

[1]The Honorable Susan O. Hickey, United States District Judge for the Western District of Arkansas, sitting by designation.

[2]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa, adopting the Report and Recommendation of the Honorable Jon Stuart Scoles, United States Magistrate Judge for the Northern District of Iowa.

On October 25, 2010, a shooting took place at 1422 4th Avenue Southeast in Cedar Rapids, Iowa. Police officers had information that Gregory Hollie possessed a pistol when the shooting occurred and had given the pistol to another individual, who was later arrested. An investigation revealed information that Hollie possessed multiple firearms, was a convicted felon, and was wanted on a warrant for an unrelated incident. Officers believed that Hollie was staying at 1418 4th Avenue Southeast in Cedar Rapids.

During the early afternoon of October 27, 2010, Cedar Rapids Police Officer John O'Brien and his partner were attempting to locate Hollie. The officers had seen Hollie's booking photo and had been told Hollie's physical description—a black male in his mid-thirties, who stands six feet tall, weighs two hundred fifteen pounds, and is bald. O'Brien was driving an unmarked vehicle. As they headed westbound on the 1400 block of 4th Avenue Southeast, the officers observed a "male black subject" walking eastbound on the sidewalk adjacent to 4th Avenue, approaching 1418. Hr'g Tr. 7. According to O'Brien, he and his partner believed that the subject was Hollie. The officers saw the subject turn towards 1418, but were unable to ascertain whether he proceeded to the house located at 1418 or to the area between 1418 and 1422.

O'Brien then drove to the end of the block and later positioned his vehicle so that he could view the alley behind the house. The officers observed a white vehicle pull into the parking area behind 1418, and after again repositioning, saw the white vehicle driving down the alley towards 14th Street. The officers observed a white female driver, a white female passenger in the front seat, and the man they had seen walking on 4th Avenue Southeast, who they believed to be Hollie, seated behind the driver. Although the officers did not see the subject enter the car, O'Brien testified that he was sure that it was the same individual they had seen walking near the front of 1418. According to O'Brien, "the bald head really stuck out." Hr'g Tr. 46.

After following the white vehicle for a few blocks, the officers initiated an investigative stop. O'Brien conceded that there had been no traffic violations or any

other independent reason to stop the vehicle. According to O'Brien, when the occupants of the vehicle noticed the officers, the individual he believed was Hollie began "fidgeting" or "manipulating" something to the right side of his body. Id. at 18.

O'Brien and his partner approached the vehicle and asked the occupants for identification. O'Brien testified that "[a]t that point, I was convinced that it was Mr. Hollie from all of the information that I had at that time." Id. at 20. When the male subject reached for his right rear pants pocket to retrieve his identification, he turned his body away from O'Brien, which struck O'Brien as "a really unnatural maneuver." Id. According to O'Brien, "if your wallet is on your back right pocket, you're going to lean to the left and take the weight off of the wallet as opposed to putting more weight on it to get it out of your pocket." Id. O'Brien became concerned at this point because "the suspect we were looking for was known to be armed, had just left an area where a shooting had taken place, and now I'm getting this weird maneuver in the car to shield his body from me to get his wallet out of his back pocket[.]" Id. at 21.

As the subject reached for his identification card, O'Brien asked him if he had come from the residence located at 1418 4th Avenue Southeast. The subject replied that he had not, but after O'Brien mentioned having seen him near that address, the subject admitted that he had stopped by the house to give some money to a friend.

The subject handed O'Brien his identification card, which listed the name Tony Phillips. O'Brien testified that he could not determine whether the person on the identification card was the same person who was sitting in the back passenger's seat, in part because O'Brien had stepped back from the car to shield himself when the subject was reaching awkwardly for his identification. O'Brien asked the subject to step out of the car. As the subject was doing so, O'Brien asked if he had any weapons in his possession. He replied that he had a pistol in his right front pocket. O'Brien and his partner then placed the individual in handcuffs. After the subject exited the

vehicle, O'Brien "was able to get a good look at his face, was able to determine that the I.D. was good." Id. at 26.

Phillips was charged with being a felon in possession of a firearm. The district court found O'Brien's testimony credible and denied Phillips's motion to suppress. Phillips argues that his motion should have been granted because the stop and detention violated his Fourth Amendment right to be free from unreasonable searches and seizures.

In reviewing the denial of a motion to suppress, we examine the district court's findings of fact for clear error and review *de novo* whether the investigatory stop and search violated the Fourth Amendment. Ornelas v. United States, 517 U.S. 690, 699 (1996); United States v. Smith, 648 F.3d 654, 658 (8th Cir. 2011). "A law enforcement officer may conduct an investigative stop of a vehicle if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot." United States v. Robinson, 670 F.3d 874, 876 (8th Cir. 2012) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989) and Terry v. Ohio, 392 U.S. 1, 30 (1968)) (internal quotations omitted). Phillips concedes that the officers would have had the authority to seize and detain Hollie, who was wanted in connection with a recent felony and was subject to an arrest warrant, but he argues that the record does not support O'Brien's asserted mistaken belief that Phillips was Hollie.

"[T]he validity of a stop depends on whether the officer's actions were objectively reasonable in the circumstances, and in mistake cases the question is simply whether the mistake, whether of law or of fact, was an objectively reasonable one." United States v. Smart, 393 F.3d 767, 770 (8th Cir. 2005). Phillips contends that O'Brien's mistake was not objectively reasonable because the description of Hollie and his booking photo identified common physical characteristics and because O'Brien had observed Phillips for too short a period and from too far a distance to identify him as Hollie. We disagree.

-4-

As a six-foot, two-hundred pound, thirty-eight year old, bald black man, Phillips closely matched Hollie's description and booking photo. Although O'Brien's initial observation of Phillips was brief and from a distance, O'Brien testified that it was "a good enough look to convince me that it was Gregory Hollie." Hr'g Tr. 33. Moreover, O'Brien observed Phillips approaching the house where the officers believed Hollie to be staying. Given the totality of the circumstances, O'Brien's mistaken belief that Phillips was Hollie was objectively reasonable.

Phillips next argues that O'Brien had no reason to order him to exit the vehicle. He contends that his identification card correctly identified him as Tony Phillips and that O'Brien could have confirmed his identity by looking through the window. During a lawful investigative stop, an officer may order a passenger to exit the vehicle. See United States v. Cloud, 594 F.3d 1042, 1045 (8th Cir. 2010) (citing Maryland v. Wilson, 519 U.S. 408, 415 (1997) ("We . . . hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop.")). The investigative stop was pending when O'Brien asked Phillips to exit the car, for O'Brien had not yet determined whether the subject was Hollie. O'Brien testified that he asked the subject to exit the vehicle because of the concern for officer safety. Immediately after exiting the vehicle and before his identity could be fully established, Phillips admitted to having a gun in his front pocket. We agree with the magistrate judge's determination that O'Brien's "action seems particularly prudent in this case, since O'Brien believed that he was dealing with an armed fugitive who had been involved in a shooting two days earlier." Report and Recommendation of April 11, 2011, at 8.

Because O'Brien's mistake was objectively reasonable, the stop did not violate the Fourth Amendment. The evidence obtained in the course of the investigative stop thus was not the fruit of a constitutional violation. The district court's judgment is affirmed.

_____