# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1655

_____

United States of America

*Plaintiff - Appellee*

v.

John D. Farnell

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri – St. Louis

_____

Submitted: September 21, 2012
Filed: December 4, 2012

_____

Before MELLOY, BEAM, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

A Missouri State Highway Patrol officer stopped John David Farnell on suspicion that Farnell robbed a bank in Cuba, Missouri. The officer searched Farnell's vehicle and discovered evidence matching the bank robber's description and tending to show Farnell's involvement in the robbery. Farnell moved to suppress the evidence, claiming that the stop and search of his vehicle violated his Fourth

Amendment rights. The district court[1] denied Farnell's motion, and Farnell appealed. For the reasons set forth below, we affirm.

I.

A.

Around 10:30 a.m. on April 29, 2010, Corporal Kyle Wilmont of the Missouri State Highway Patrol (MSHP) received a radio dispatch regarding a bank robbery that had taken place earlier that morning in Cuba, Missouri. The dispatch described the suspect's vehicle as a white van and the suspect as a heavy-set, white male wearing a dark baseball cap, dark sunglasses, and a blue long-sleeved button-down shirt.[2] Wilmont, upon receiving the dispatch, positioned himself at the intersection of two highways outside of Cuba to secure the perimeter.

At approximately 11:30 a.m., Wilmont observed a white van traveling westbound toward the interstate highway. The driver of the van was a heavy-set, white male wearing a yellow t-shirt and yellow baseball cap. As the van passed Wilmont, the driver of the van held up his hand to conceal his face. Wilmont, suspecting that the driver was involved in the bank robbery in Cuba, pulled out behind the van and called in the van's license plate number. Wilmont then turned on

---

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri, adopting the report and recommendations of the Honorable David D. Noce, United States Magistrate Judge for the Eastern District of Missouri.

[2]Previously, on February 26, 2010, two bulletins regarding several bank robberies were issued to the MSHP. The bulletins contained a description of the suspect similar to the one in the April 29 dispatch and noted that the suspect was believed to be armed with a pistol. The February 26 bulletins also included a description and photos of the suspect's vehicle, which was a white van with one driver-side door and two passenger-side doors.

his lights and siren and stopped the van to investigate. The driver's license showed him to be John Farnell, to whom the van was registered. After ordering Farnell to exit the vehicle,[3] Wilmont explained to Farnell that he stopped him because the van matched the description of the vehicle that was used in a bank robbery that morning in Cuba. Farnell told Wilmont that he was driving from Steelville, Missouri, where he had been antique shopping. Wilmont had previously looked through the windows of the van and had seen only empty cardboard boxes.

Wilmont and Farnell walked around to the passenger side of the van, at which time Farnell voluntarily opened the sliding door to sit down on the floor. Wilmont could see on the front passenger seat maps with cities that were highlighted and circled. When Wilmont asked Farnell about the maps, Farnell stated that the cities were places that he planned to look for antiques. Wilmont then explained to Farnell that FBI agents were on their way and that the agents would decide whether or not to eliminate him as a suspect in the bank robbery.

Prior to the arrival of the FBI agents, Wilmont told Farnell that he also wanted to investigate further to determine whether Farnell could be eliminated as a suspect. At this point, Wimont radioed to the dispatcher for a further description of the robbery suspect. The dispatcher said that the suspect had a chipped right front tooth. Upon hearing this, Farnell smiled, revealing a missing left front tooth. Additionally, Wilmont learned that other officers had compared Farnell's driver's license photo with surveillance tapes of the robbery and believed that Farnell was the robber. Wilmont asked Farnell for permission to search the van, and Farnell orally consented. Prior to entering the van, Wilmont asked Farnell if any items that he had described to Farnell as being connected to the robbery—a blue button-down shirt, a ball cap, a

---

[3]Prior to Farnell pulling over, Wilmont observed Farnell reaching for something in the center console of the van, and when Wilmont asked Farnell to show his hands and place them outside the van window, Farnell's hands were "visibly shaking" and he appeared "extremely nervous."

large amount of money, and a weapon—were in the van. Farnell told him that there was a gun in the center console. Wilmont then searched the center console and retrieved a Ruger Red Hawk .357 revolver, which he immediately secured. Additional MSHP law enforcement officers then arrived, and Wilmont was ordered to photograph the gun and exterior of the van while another officer handcuffed Farnell. At this point, Farnell was placed in the vehicle of an officer who had recently arrived on the scene.

After he finished photographing the exterior of the van but without again asking Farnell for permission, Wilmont reentered the van to search for additional evidence of the Cuba bank robbery. He located a closed green bag in the cargo area of the van, which contained a large amount of U.S. currency, a blue button-down shirt, and other items that were reported as being related to the robbery. Wilmont then stopped his search and exited the van to secure it for the FBI.

Farnell was placed under formal arrest and transported away from his van. He was later advised of his Miranda[4] rights, which he waived, and signed a "Consent to Search and Seize" form, expressly consenting to a search of his van. FBI Special Agent Michael Christian subsequently applied for a warrant to search the van. The warrant application included a supporting affidavit detailing the robbery at the First Community National Bank in Cuba and the events that transpired thereafter, including Wilmont's knowledge of the February 26 bulletins and April 29 dispatch, see supra note 2, and Wilmont's roadside stop and search of the van. The affidavit also stated that Farnell confessed to the robbery in Cuba, along with five other bank robberies.

Based on Christian's affidavit, a magistrate judge issued a search warrant for Farnell's van. Upon executing the warrant, MSHP officers seized five .357 mm

---

[4]Miranda v. Arizona, 384 U.S. 436, 444–45 (1966).

rounds of ammunition; a flathead screwdriver; an identification card holder containing a bank card and $800.00 cash; maps and written directions; a cell phone; and a green bag containing a black baseball cap, black t-shirt, blue denim long-sleeved t-shirt, and $4562.00.[5]

B.

Farnell moved to the suppress the physical evidence obtained from Wilmont's search of his van. The district court, adopting the Order and Recommendation of the magistrate judge, denied Farnell's motion. In his appeal, Farnell claims that the stop and search of his vehicle violated his Fourth Amendment rights for three reasons. First, Farnell contends that Wilmont did not have a valid basis for conducting a warrantless seizure of his van when he stopped him along the highway. Second, Farnell argues that he did not voluntarily consent to Wilmont's initial search of his van. And third, Farnell claims that after Wilmont photographed his van, Wilmont needed to again obtain his consent to conduct what was a separate search of the van, and that Wilmont did not obtain his consent.

II.

A.

We review a district court's denial of a motion to suppress under a two-pronged framework: factual findings are reviewed for clear error, and legal conclusions are reviewed *de novo*. United States v. Lomeli, 676 F.3d 734, 738 (8th Cir. 2012). "We must affirm an order denying a motion to suppress unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake

---

[5]Christian's affidavit stated that the bank teller gave $4662.00 to the robber.

has been made." United States v. Rodriguez–Hernandez, 353 F.3d 632, 635 (8th Cir. 2003).

B.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend IV. The Fourth Amendment's "'central requirement' is one of reasonableness," Illinois v. McArthur, 531 U.S. 326, 330 (2001) (quoting Texas v. Brown, 460 U.S. 730, 739 (1983)), which "is measured in objective terms by examining the totality of the circumstances," Ohio v. Robinette, 519 U.S. 33, 39 (1996). "[I]t is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" Mincey v. Arizona, 437 U.S. 385, 390 (1978) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). "[T]he reasonableness of . . . seizures depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975) (citations omitted).

With these basic principles to guide our analysis, we address in turn Farnell's three Fourth Amendment challenges to Wilmont's stop and subsequent searches of his van.

1.

Farnell first objects to Wilmont's warrantless stop of his van. We note that the "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." Whren v. United States,

-6-

517 U.S. 806, 809–10 (1996) (citations omitted); United States v. Lopez, 564 F.3d 1001, 1003 (8th Cir. 2009). "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." Whren, 517 U.S. at 810. Whether a seizure was reasonable is a question of law. Howard v. Kansas City Police Dep't, 570 F.3d 984, 989 (8th Cir. 2009).

"For an officer to perform an investigatory stop of a vehicle, there must be reasonable suspicion. . . . that criminal activity is afoot." United States v. Walker, 555 F.3d 716, 719 (8th Cir. 2009) (applying the standard of Terry v. Ohio, 392 U.S. 1, 30 (1968)). "In order for such a stop to be constitutional under the Fourth Amendment, the officer must be aware of 'particularized, objective facts, which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.'" Id. (quoting United States v. Martin, 706 F.2d 263, 265 (8th Cir. 1983)). "While 'reasonable suspicion' must be more than an inchoate 'hunch,' the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." United States v. Fuse, 391 F.3d 924, 929 (8th Cir. 2004). The officer need not have probable cause. See United States v. Winters, 491 F.3d 918, 921 (8th Cir. 2007) (citing United States v. Sokolow, 490 U.S. 1, 7 (1989)). "In evaluating the validity of a stop, we must consider 'the totality of the circumstances—the whole picture.'" Id. at 921–22 (quoting Sokolow, 490 U.S. at 8).

Farnell argues that the only basis for Wilmont to pull him over was that he was a heavy-set, white male driving a white van, and that these circumstances alone do not constitute "reasonable suspicion." Farnell notes that he was wearing different clothes than the suspect's clothes described in the dispatch; that his van had different license plates than the ones in the dispatch; and that Wilmont did not claim that he committed any traffic violations. According to Farnell, "Wilmont's stated basis for the initial traffic stop was so lacking in actual detail that . . . almost any vehicle could be stopped under the guise of investigation, a clear constitutional violation."

We disagree. We have several times stated that "[i]f a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, to pose questions to the person, or to detain the person briefly while attempting to obtain further information." E.g., United States v. Smith, 648 F.3d 654, 659 (8th Cir. 2011) (quoting United States v. Hensley, 469 U.S. 221, 232 (1985) (internal quotation marks omitted)); see also United States v. Jacobsen, 391 F.3d 904, 906 (8th Cir. 2004). Moreover, a person's physical appearance and location relative to a known crime scene can provide an objectively reasonable basis for an officer to stop that person, even where the officer's observation of the person is "brief and from a distance" and "there had been no traffic violations or any other independent reason to stop the vehicle." United States v. Phillips, 679 F.3d 995, 997–98 (8th Cir. 2012) (denying motion to suppress and finding that police had reasonable suspicion based on totality of circumstances).

Here, Wilmont was aware of the Feburary 26 bulletins—which included multiple photos of a white van with a single door on the driver's side—and the April 29 dispatch, which described the bank robbery suspect's vehicle as a white van. Wilmont was also aware of description of the suspect as a heavy-set, white male. Additionally, when Farnell drove past him, Wilmont observed Farnell shielding his face with one hand. The location and timing of Wilmont's interception of Farnell are also consistent with what Wilmont knew about the bank robbery: Wilmont positioned himself at an intersection along a known travel route from Cuba to the interstate highway and observed Farnell's van approaching him approximately one hour after the dispatch regarding the robbery.

In view of the above, we are satisfied that Wilmont had, at a minimum, a "reasonable suspicion" that Farnell was engaged in criminal activity when he turned on his lights and siren and stopped Farnell's van.

2.

Farnell also objects to Wilmont's search of his van. Specifically, Farnell claims that Wilmont did not have a warrant to search his van and that Wilmont did not otherwise obtain his voluntary consent. Whether a person voluntarily consents to a search is a question of fact. United States v. Sanders, 424 F.3d 768, 773 (8th Cir. 2005).

Consent to search is one exception to the warrant requirement, and "[a] warrantless search is valid if conducted pursuant to the knowing and voluntary consent of the person subject to a search." Sanders, 424 F.3d at 773 (alteration in original) (citation and internal quotation marks omitted). "An individual may validly consent to an otherwise impermissible search if, in the totality of the circumstances, consent is freely and voluntarily given, and not the product of implicit or explicit coercion." United States v. Castellanos, 518 F.3d 965, 969 (8th Cir. 2008) (citation and internal quotation marks omitted). "The government has the burden of proving by a preponderance of the evidence that a subject's alleged consent to a search was legally sufficient to warrant admitting the fruits of the search into evidence." United States v. Cedano-Medina, 366 F.3d 682, 684 (8th Cir. 2004). This is an objective standard such that "a person can render a search legal by behaving in a way that would cause a reasonable person to believe that he or she has knowingly and voluntarily consented, whether or not the person actually intends to consent." Id. at 684–85.

Farnell claims that Wilmont "forced [him] to permit a search of his vehicle without even providing the most basic rights and parameters, and [did] so while he was already in the midst of entering the vehicle." The district court, however, found that Wilmont, prior to entering the van, asked Farnell for permission to search the van and its contents, and that Farnell orally consented absent any threats or promises from

Wilmont and without being under the influence of any drugs or alcohol. This consent came after Wilmont explained his reasons for stopping Farnell and the specific items that he was looking for in connection with the robbery.

Farnell also indicated his consent to the search of his van through his actions. When Wilmont and Farnell walked to the passenger side of the van, Farnell voluntarily opened the sliding door, exposing the interior of the van to Wilmont's plain view. Additionally, when asked whether any of the items that Wilmont described as being related to the robbery were in the van, Farnell told Wilmont that he had a gun in the center console. Farnell also smiled to reveal that he was missing his front left tooth upon hearing over Wilmont's radio that the Cuba robbery suspect had a chipped right front tooth. A reasonable person in Wilmont's position would have concluded that, under the totality of the circumstances, Farnell consented to the search of his van. See United States v. Mendoza, 677 F.3d 822, 829 (8th Cir. 2012) (finding that the defendant's "gestures and body language indicated his consent" and that his "behavior leading up to and during the search were consistent with consent"); United States v. Jones, 254 F.3d 692, 695 (8th Cir. 2001) (declining to find clear error in district court's determination that the defendant's consent "was implied by his actions and statements" (internal quotation marks omitted)).

In view of the above, the district court did not clearly err in determining that Farnell had consented to Wilmont's search of his van.

3.

Third, Farnell argues that Wilmont failed to obtain consent when he searched his van after photographing the gun and the van's exterior. Specifically, Farnell claims that Wilmont's subsequent search was a new and separate search—as opposed to a continuation of his initial search—for which Wilmont needed to again obtain

Farnell's consent. The government, on the other hand, claims that Wilmont's second entry and search of the van was merely a continuation of his earlier search, and because Farnell did not object or withdraw his consent, there was no Fourth Amendment violation.

Even if we were to accept Farnell's argument that Wilmont's second entry and search of the van is a separate search, "[t]he so-called 'automobile exception' permits police to conduct a warrantless search of an automobile if, at the time of the search, they have probable cause to believe that the vehicle contains contraband or other evidence of a crime." United States v. Kennedy, 427 F.3d 1136, 1140–41 (8th Cir. 2005) (citations omitted); Chambers v. Maroney, 399 U.S. 42, 48 (1975) ("[A]utomobiles . . . may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize." (summarizing the Court's holding in Carroll v. United States, 267 U.S. 132, 153–56 (1925), and citing approving cases)). "In determining whether an officer had probable cause to search, courts apply a common sense approach and consider all relevant circumstances." Kennedy, 427 F.3d at 1141.

Here, Wilmont's discovery of the gun, along with the circumstances of his encounter with Farnell and his knowledge of the bank robbery suspect, see supra Part I.A, amount to probable cause to believe that additional evidence of the bank robbery would be found inside the van. See Illinois v. Gates, 462 U.S. 213, 238–39 (1983) (probable cause requires only that "a fair probability that contraband or evidence of a crime will be found in a particular place"). Wilmont thus did not need to obtain Farnell's consent, or a warrant, when he searched the van for a second time.[6]

_____

[6]This remains true even after Arizona v. Gant, in which the Supreme Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the

In view of the above, we affirm the district court's decision to deny Farnell's motion to suppress the physical evidence obtained from Wilmont's second entry into the van.[7]

### III.

For the reasons set forth above, we affirm the district court's denial of Farnell's motion to suppress the physical evidence obtained from his van.

_____

_____

search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 556 U.S. 332, 351 (2009). Although Farnell had been handcuffed and not yet arrested when Wilmont searched his van for a second time, "[w]arrantless searches need only be justified by one exception to the Fourth Amendment warrant requirement[.]" United States v. Webster, 625 F.3d 439, 445 (8th Cir. 2012); United States v. Grooms, 602 F.3d. 939, 942–43 (8th Cir. 2010) ("[B]ecause we conclude the search of [the defendant's] vehicle was supported by probable cause, it is no longer necessary to justify the warrantless nature of the search as one incident to arrest; rather the warrantless search can be justified under the automobile exception.").

[7]We note that Wilmont's search of the closed green bag where he found the black baseball cap, black t-shirt, blue denim long-sleeved t-shirt, and $4562.00 was proper for at least the reason that the green bag was in the van when Wilmont conducted the second search. See United States v. Ross, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.").