# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2063

_____

United States of America

*Plaintiff - Appellee*

v.

Ismael Tamayo-Baez

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: December 16, 2015
Filed: April 11, 2016

_____

Before WOLLMAN, LOKEN, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Ismael Tamayo-Baez pled guilty to illegal reentry by a removed alien in violation of 8 U.S.C. § 1326(a). As a condition of his guilty plea, Tamayo-Baez reserved the right to appeal the district court's[1] denial of his motion to suppress and

_____

[1]The Honorable Linda R. Reade, Chief Judge for the United States District Court for the Northern District of Iowa, in part adopting the Report and

motion to dismiss the indictment. Tamayo-Baez argues the district court erred in denying his motion to suppress because law enforcement violated his Fourth Amendment rights by performing a traffic stop without reasonable suspicion. He also asserts the district court erred in denying his motion to dismiss the charge of illegal reentry by a removed alien because his final order of removal in 2004 was not adequately explained to him in Spanish and therefore violated his due process rights. We find law enforcement had reasonable suspicion to perform a traffic stop and that Tamayo-Baez's rights were adequately explained to him in Spanish. We affirm.

I

Tamayo-Baez illegally entered the United States in 1997. In 2002, Tamayo-Baez married an American citizen and subsequently filed paperwork to obtain lawful status. Tamayo-Baez and his wife resided in Hampton, Iowa.

In February 2004, Tamayo-Baez was convicted of domestic abuse assault and two counts of making false licenses in the Iowa District Court for Franklin County. That same month, Tamayo-Baez received three immigration forms: (1) Notice of Rights and Request for Disposition (Notice of Rights); (2) Notice to Appear before an Immigration Judge (Notice to Appear); and (3) a Stipulated Request for Removal Order and Waiver Hearing (Stipulation for Removal). The Notice of Rights, which was printed in Spanish and English, alleged Tamayo-Baez was in the United States illegally and had the right to a hearing before the Immigration Court to determine if he could remain in the United States. On this form, Tamayo-Baez checked and initialed the box written in Spanish indicating he admitted he was in the United States illegally, he wished to return to Mexico, and that he waived his right to a hearing before the Immigration Court. Both Tamayo-Baez and an immigration officer signed

Recommendation of the Honorable Jon S. Scoles, United States Magistrate Judge for the Northern District of Iowa.

-2-

and dated the Notice of Rights form which stated Tamayo-Baez had read the form in Spanish and that the form was also read to him by the immigration officer in Spanish. Second, the Notice to Appear set forth Tamayo-Baez's rights at a removal hearing. An immigration agent certified that an immigration officer read the Notice to Appear form to Tamayo-Baez in Spanish. Tamayo-Baez signed the form. Lastly, the Stipulation for Removal was printed in both English and Spanish and stipulated that Tamayo-Baez waived his right to a removal hearing and instead requested the Immigration Judge (IJ) issue an order based on the written record. In this form, Tamayo-Baez waived his right to appeal the IJ's decision. Tamayo-Baez filled out the Stipulation for Removal in Spanish and English by circling responses. He signed the Stipulation for Removal which indicated he read and understood the form and that his decision to stipulate was voluntarily, knowingly, and intelligently made.

On March 9, 2004, an IJ ordered Tamayo-Baez be removed from the United States. One week later, Tamayo-Baez was removed to Mexico.

In the fall of 2014, Immigration and Customs Enforcement (ICE) agents were investigating the fraudulent use of social security numbers by illegal immigrants by checking vehicle registrations at worksites in Iowa. During the investigation, ICE agents found a 1997 black Jeep Cherokee registered to Tamayo-Baez's wife, Andrea Tamayo, with a Hampton, Iowa, address. Immigration officers performed a computer check of the Hampton residence and Ismael Tamayo-Baez's name was associated with that address. Immigration officers then conducted a criminal history check on Tamayo-Baez and the search revealed he had been convicted of domestic abuse assault in 2009–after he was removed–in Franklin County, Iowa.[2] Further, a social media inquiry revealed a photo of Tamayo-Baez in front of the black Jeep Cherokee. Accordingly, ICE Agent Kevin Taylor testified he believed Tamayo-Baez unlawfully reentered the United States.

---

[2]Hampton is a city in Franklin County.

On the morning of October 23, 2014, Agent Taylor drove to the house in Hampton where he believed Tamayo-Baez resided. Shortly after arriving at the residence, Agent Taylor testified that he saw a male matching Tamayo-Baez's description get into a black Jeep Cherokee and drive away. Agent Taylor followed the Jeep and at around 5:50 a.m., he stopped the Jeep as it was heading out of town.

Agent Taylor testified that he asked the driver for his name and that the driver stated his name was Ismael Tamayo or Ismael Tamayo-Baez. Agent Taylor also asked Tamayo-Baez what country he was from and he responded he was from Mexico. Agent Taylor testified he asked Tamayo-Baez if he had any papers to be in the country legally and he said no. At that point, Agent Taylor told Tamayo-Baez to step out of the vehicle and that he was under arrest for violating immigration law. Agent Taylor took Tamayo-Baez to the Franklin County Sheriff's Office and fingerprinted him for identification purposes. The fingerprint results confirmed Tamayo-Baez's identity.

A grand jury charged Tamayo-Baez in an indictment with one count of illegal reentry by a removed alien in violation of 8 U.S.C. § 1326(a). Tamayo-Baez filed a motion to suppress alleging Agent Taylor lacked reasonable suspicion to perform a traffic stop. After an evidentiary hearing on the motion, the magistrate judge issued a Report and Recommendation recommending the district court deny the motion to suppress. The district court adopted the Report and Recommendation and denied the motion to suppress.

Tamayo-Baez also filed a motion to dismiss the indictment based upon a collateral attack of the final removal order. The district court held an evidentiary hearing on the motion where Tamayo-Baez testified that he did not understand the forms he had signed because he is functionally illiterate and the immigration officer only explained his rights to him in English. The district court found Tamayo-Baez's testimony not credible and denied the motion to dismiss.

Following the district court's denial of Tamayo-Baez's motion to suppress and motion to dismiss, Tamayo-Baez entered a conditional plea of guilty. Tamayo-Baez reserved the right to appeal the district court's denial of his motion to suppress and motion to dismiss. The district court sentenced Tamayo-Baez to a term of eight months' imprisonment, and Tamayo-Baez timely filed this appeal.

II

A

Tamayo-Baez argues Agent Taylor lacked reasonable suspicion to conduct a traffic stop because he improperly relied on an inchoate hunch as to the identification of the driver prior to the traffic stop. Tamayo-Baez therefore claims the traffic stop was unlawful and the district court erred by not suppressing the evidence obtained as a result of his unlawful stop. We disagree.

"We review the denial of a motion to suppress de novo but the underlying factual determinations for clear error, giving due weight to inferences drawn by law enforcement officials." United States v. Hurd, 785 F.3d 311, 314 (8th Cir. 2015) (quoting United States v. Clutter, 674 F.3d 980, 982 (8th Cir. 2012)). The Fourth Amendment permits investigative traffic stops when law enforcement has reasonable suspicion of criminal activity. Navarette v. California, 134 S. Ct. 1683, 1687 (2014). "Reasonable suspicion exists when an 'officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.'" United States v. Givens, 763 F.3d 987, 989 (8th Cir. 2014) (quoting United States v. Hollins, 685 F.3d 703, 706 (8th Cir. 2012)). "While reasonable suspicion must be more than an inchoate hunch, the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." United States v. Fuse, 391 F.3d 924, 929 (8th Cir. 2004) (internal quotation marks omitted). We must evaluate whether the officer

had "reasonable suspicion of criminal activity" in light of "the totality of the circumstances." United States v. Walker, 555 F.3d 716, 719 (8th Cir. 2009).

We find Agent Taylor had reasonable suspicion to perform a traffic stop on Tamayo-Baez. Immigration officers had information to believe Tamayo-Baez had illegally reentered the United States and was residing in Hampton, Iowa. Specifically, immigration officers found a 1997 black Jeep Cherokee registered to Tamayo-Baez's wife at a Hampton address. Immigration officers then performed a computer check of the Hampton residence and Tamayo-Baez's name was associated with that address. Next immigration officers completed a criminal history search of Tamayo-Baez and the search revealed he had been convicted of domestic abuse assault in 2009–after he was removed–in Franklin County, Iowa. Finally a social media inquiry showed Tamayo-Baez pictured in front of a black Jeep Cherokee which matched the description of the 1997 black Jeep Cherokee registered to his wife at the Hampton address. Therefore, when Agent Taylor identified a man matching Tamayo-Baez's description get into a black Jeep Cherokee at the Hampton, Iowa, address, he had reasonable suspicion that the man in the vehicle was Tamayo-Baez and that he was committing a crime by being in the country illegally.

Accordingly, the district court did not err in denying Tamayo-Baez's motion to suppress because, based on the totality of the circumstances, Agent Taylor had reasonable suspicion Tamayo-Baez was committing a crime and therefore the traffic stop was lawful.

B

Tamayo-Baez argues the district court erred by not granting his motion to dismiss the charge of illegal reentry by a removed alien because his prior order of removal was invalid. In particular, Tamayo-Baez now collaterally attacks his prior

order of removal arguing it violated his due process rights because it was not adequately explained to him in Spanish.  We disagree.

"We review the district court's findings of fact for clear error, but we review de novo whether those facts establish a due process defect."  United States v. Rodriguez, 420 F.3d 831, 833 (8th Cir. 2005).  The defendant "bears the burden of proof in a collateral attack upon a prior deportation."  United States v. Martinez-Amaya, 67 F.3d 678, 681-82 (8th Cir. 1995).

Pursuant to 8 U.S.C. § 1326(d), a defendant may collaterally attack a prior deportation order if:

> (1)  the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2)  the deportation proceedings at which the order was issued improperly deprived the alien of opportunity for judicial review; and
>
> (3)  the entry of the order was fundamentally unfair.

The defendant must meet all three requirements in order to successfully collaterally attack the prior removal order.  Id.; see also United States v. Fernandez-Antonia, 278 F.3d 150, 157 (2d Cir. 2002).

Tamayo-Baez argues that although he waived his right to appeal by signing the Stipulation for Removal, his waiver was not voluntarily and intelligently made because he was not advised of his rights in Spanish nor able to understand the documents he signed due to his limited education.  He therefore claims he is exempt from the requirement of exhausting administrative remedies because his waiver was invalid.  "[I]f an alien knowingly and voluntarily waives his right to appeal an order of deportation, then his failure to exhaust administrative remedies will bar collateral attack on the order in a subsequent illegal reentry prosecution under § 1326(d)."

United States v. Cerna, 603 F.3d 32, 39 (2d Cir. 2010); see also United States v. Chavez-Alonso, 431 F.3d 726, 728 (10th Cir. 2005) ("An alien who knowingly waives the right to appeal an immigration judge's order of deportation fails to exhaust administrative remedies under § 1326(d)(1)."). Tamayo-Baez testified about his understanding of the immigration documents at his evidentiary hearing but the district court found his testimony inconsistent with the record and therefore not credible.

The district court's factual findings were not erroneous, let alone clearly erroneous. Although Tamayo-Baez now claims he did not understand the documents he signed, he testified that he did not sign documents without understanding them. Despite arguing after the fact that he was confused while signing the documents, Tamayo-Baez conceded he did not ask the immigration officers any questions or inform them that he was confused while signing the documents. While Tamayo-Baez claimed immigration officers only read his rights to him in English, an immigration officer signed and dated the Notice to Appear and Notice of Rights forms indicating he read the forms to Tamayo-Baez in Spanish. The Stipulation for Removal, which was written in English and Spanish and filled out by Tamayo-Baez in Spanish and English, stated that Tamayo-Baez read and fully understood the form and that his decision to stipulate was voluntarily, knowingly, and intelligently made. Therefore, Tamayo-Baez was adequately advised of his rights in Spanish, his waiver of his right to appeal was valid, and he failed to exhaust administrative remedies.

Because Tamayo-Baez failed to establish the first requirement of § 1326(d), his collateral attack fails. The district court did not err in denying Tamayo-Baez's motion to dismiss.

III

For the foregoing reasons, we affirm the district court.