# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-3123
_____

United States of America

*Plaintiff - Appellee*

v.

Misael Saqueo Lopez-Tubac

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Ft. Dodge
_____

Submitted: September 27, 2019
Filed: December 6, 2019
_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Misael Saqueo Lopez-Tubac entered a conditional guilty plea to one count of unlawful use of identification documents in violation of 18 U.S.C. § 1546(a). Lopez-

Tubac now appeals his conviction, arguing that the district court[1] erred in denying his motion to suppress evidence. We affirm.

## I.

In January 2017, authorities in Bremer County, Iowa alerted Immigration and Customs Enforcement ("ICE") Deportation Officer Bryce Callison that they had arrested an alien for driving while under the influence. The authorities had released the alien but suspected he may be illegally present in the United States. As part of a subsequent investigation, Officer Callison learned that the suspect had been removed from the United States to Mexico in 2011. He also learned that the car the suspect was driving at the time of arrest was not registered to him but instead to a female who resided at 537 Montero Drive, an address that corresponded to a mobile home park in Waterloo, Iowa.

Over the next sixteen months, Callison attempted to locate the suspect. Callison found a description of the suspect in his arrest record, including that he had brown eyes, dark brown hair, stood at approximately 5'3", and weighed roughly 187 pounds. Callison also obtained a photograph of the suspect taken after his 2011 arrest. He then contacted the manager of the mobile home park, who, after viewing the photograph of the suspect, verified that he lived at 537 Montero Drive—the address the suspect provided at the time of his January 2017 arrest. Armed with this information, Callison conducted periodic surveillance of the residence, observing the property six to eight times between February 2017 and May 2018. In March 2018, he observed the vehicle associated with the suspect at the residence. While surveilling the property, Callison also observed several Hispanic males but none who looked like the suspect.

---

[1]The Honorable Leonard T. Strand, Chief Judge, United States District Court for the Northern District of Iowa, adopting the report and recommendation of the Honorable C.J. Williams, Chief Magistrate Judge, United States District Court for the Northern District of Iowa.

On the morning of May 8, 2018, Officer Callison again conducted surveillance outside the suspect's residence. There, he observed Lopez-Tubac emerge from between 537 Montero Drive and 541 Montero Drive and enter the passenger side of a vehicle stopped nearby. Callison testified that Lopez-Tubac passed within thirty feet of him and that he was able to observe him for ten to fifteen seconds. From his viewpoint in his car, Callison believed Lopez-Tubac matched the picture of the suspect.

After following the vehicle for ten minutes, Callison initiated an investigative stop. During the stop, appellant identified himself as Misael Saqueo Lopez-Tubac, stated that he was a citizen of Guatemala, and admitted that he did not have permission to be in the United States. ICE officers took Lopez-Tubac's fingerprints to determine whether he was the suspect. He was not. But in completing their investigation, they learned Lopez-Tubac had previously been charged with an immigration offense. Lopez-Tubac was arrested for being illegally present in the United States and taken to an ICE office for further processing.

An inventory search of Lopez-Tubac's belongings produced an employee identification card. ICE agents then contacted the employer listed on the card and obtained documents falsified by Lopez-Tubac, including a W-4 tax form, a Form I-9, and photocopies of a permanent resident card and a Social Security card. Lopez-Tubac was charged with the unlawful use of identification documents.

Before the district court, Lopez-Tubac moved to suppress all evidence stemming from the traffic stop, including his roadside statements and all documents found during the inventory search and subsequent investigation, on the grounds that this evidence comprised fruit of an unconstitutional search and seizure. *See Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963). The district court denied the motion to suppress, finding, in relevant part, that Officer Callison had a reasonable suspicion to stop Lopez-Tubac. Lopez-Tubac appeals.

## II.

Lopez-Tubac argues that the district court erred by not granting his motion to suppress because the stop and subsequent search violated his Fourth Amendment right to be free from unreasonable searches and seizures. As an initial matter, he argues that Callison lacked a reasonable suspicion to stop his actual suspect. He thus claims that Callison lacked an underlying reasonable suspicion necessary to justify his mistaken stop of Lopez-Tubac. In the alternative, Lopez-Tubac claims that it was unreasonable for Callison to mistake him for the suspect because Callison had not observed the suspect at the residence and because Lopez-Tubac and the suspect do not resemble one another.

"We review the denial of a motion to suppress de novo but the underlying factual determinations for clear error, giving due weight to inferences drawn by law enforcement officials." *United States v. Tamayo-Baez*, 820 F.3d 308, 312 (8th Cir. 2016). "This court will affirm the district court's denial of a motion to suppress evidence unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." *United States v. Collins*, 883 F.3d 1029, 1031 (8th Cir. 2018) (*per curiam*).

"The Fourth Amendment permits investigative traffic stops when law enforcement has reasonable suspicion of criminal activity." *Tamayo-Baez*, 820 F.3d at 312. "Reasonable suspicion exists when an officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." *United States v. Givens*, 763 F.3d 987, 989 (8th Cir. 2014) (internal quotation marks omitted) (quoting *United States v. Hollins*, 685 F.3d 703, 706 (8th Cir. 2012)). "We assess whether a law enforcement official had reasonable suspicion of criminal activity based on the totality of the circumstances," *United States v. Mosley*, 878 F.3d 246, 251 (8th Cir. 2017), "keeping in mind that officers may draw on their experience

and training to make inferences from the information they have," *United States v. Cobo-Cobo*, 873 F.3d 613, 617 (8th Cir. 2017).

We first conclude that Callison had a reasonable suspicion that the initial suspect had committed a crime. Callison received a call from Iowa authorities in January 2017 notifying him that they had arrested an individual they suspected was in the country illegally. Callison confirmed the suspect was deported from the United States in September 2011, and the arrest indicated he had reentered the country. The car in which the suspect was arrested was registered in another person's name, and according to Callison, this is a common tactic of individuals who illegally reenter the United States because it allows them to avoid detection. Considering the totality of the circumstances, Callison had a reasonable suspicion that the suspect was committing a crime—being illegally present in the United States. *See Tamayo-Baez*, 820 F.3d at 312; 8 U.S.C. § 1326(a).

Lopez-Tubac next contends that it was not objectively reasonable for Callison to mistake him for the suspect both because of deficiencies in Callison's investigation and because Lopez-Tubac did not resemble Callison's suspect. We disagree with both propositions.

First, Lopez-Tubac argues that it was unreasonable for Callison to believe that his suspect continued to reside at 537 Montero Drive because Callison did not observe the suspect's car at the residence during the few times he surveilled the property between February 2017 and March 2018. We fail to see the significance of this fact. The suspect listed 537 Montero Drive as his address when he was arrested in January 2017; the car in which he was arrested was registered to that address as well. The manager of the mobile home park confirmed that the suspect lived there. And Callison observed the vehicle in which the suspect was arrested at the residence in March 2018, just two months before Lopez-Tubac's arrest. As we have indicated before in the context of search warrant applications, "[t]here is no bright-line test for determining when information . . . is stale," *United States v. Johnson*, 848 F.3d 872, 877 (8th Cir. 2017) (quoting *United States v. Lemon*, 590 F.3d 612, 614 (8th Cir.

2010)), but given the nature of the information, we do not think the two-month gap between the last sighting of the suspect's vehicle and Lopez-Tubac's arrest was sufficient to dissipate Callison's reasonable suspicion that the suspect lived at the residence, *see, e.g.*, *Lemon*, 590 F.3d at 614-15 (holding that information was not stale despite an eighteen-month gap between defendant's last known criminal act at his apartment and the police's application for a warrant to search the premises). While it was possible that the suspect had moved, Callison possessed no evidence suggesting he had. It was therefore reasonable for Callison to believe his suspect continued to reside at 537 Montero Drive. *Cf. United States v. LaMorie*, 100 F.3d 547, 554 (8th Cir. 1996) (determining information was not stale where codefendant could have removed evidence from residence but nothing suggested he had).

Second, Lopez-Tubac claims that it was unreasonable for Callison to mistake him for the suspect. "The validity of a stop depends on whether the officer's actions were objectively reasonable in the circumstances, and in mistake cases the question is simply whether the mistake, whether of law or of fact, was an objectively reasonable one." *United States v. Phillips*, 679 F.3d 995, 998 (8th Cir. 2012) (brackets omitted). Examining the totality of the circumstances, we cannot say that Callison's mistake was unreasonable. Callison had recently observed the vehicle in which the suspect was arrested at the residence. On the day of the arrest, he observed Lopez-Tubac emerge from near that residence at 6:20 a.m., a fact that suggested Lopez-Tubac lived there. Lopez-Tubac and the suspect both have brown hair and brown eyes and are roughly the same height, and the magistrate judge found that Lopez-Tubac "closely resembled" the suspect as depicted in the photograph that Callison possessed. Although Lopez-Tubac weighs roughly thirty pounds less than Callison's suspect, weight is subject to change over time. And given that Callison observed Lopez-Tubac from a distance of thirty feet, some variance in height or weight is not unreasonable. *Cf. United States v. Lawes*, 292 F.3d 123, 127 (2d Cir. 2002) (finding an officer's mistake was reasonable when the suspect's and appellant's weights varied by forty pounds because of challenges officers faced in observing suspect).

We find additional support for our conclusion from two analogous cases. In *Phillips*, we determined that police did not make an unreasonable mistake when they arrested the appellant even though he weighed fifteen pounds less than the suspect. 679 F.3d at 996, 998. We found it sufficient that the suspect and the appellant shared other similar characteristics, including that they were the same race, were both bald, were of similar height, and the police had observed the appellant approaching the house where officers believed the suspect was staying. *Id.* And although Lopez-Tubac suggests he was stopped because he, like the suspect, is Hispanic, we rejected similar arguments in *United States v. Thomas*, where we determined that the police's mistaken identification of the appellant as the suspect was reasonable because the suspect resembled the photograph officers had in hand. 524 F.3d 855, 858 (8th Cir. 2008). We specifically noted that though appellant argued he was only stopped because of his race, police officers had not stopped several other African-American males who were on the same bus. *Id.* at 859.

As in *Phillips* and *Thomas*, so too here. Callison did not stop any other Hispanic individuals who lived in the mobile home park, nor did he seek to investigate the Hispanic driver of the car in which Lopez-Tubac was riding at the time of the investigative stop. Instead, Callison stopped Lopez-Tubac because he believed Lopez-Tubac closely resembled the suspect based on the suspect's description and photograph and because he observed Lopez-Tubac emerging from near the suspect's residence.

Accordingly, we agree with the district court that, combined with other circumstances, "any dissimilarities would not have been so apparent that it was unreasonable for Callison to believe that Lopez-Tubac was the target."

### III.

Because Callison's mistake was objectively reasonable, he had reasonable suspicion to stop Lopez-Tubac. *See Phillips*, 679 F.3d at 998. Thus, "[t]he evidence

obtained in the course of the investigative stop . . . was not the fruit of a constitutional violation." *Id.*

For the foregoing reasons, we affirm.

_____