# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1645

_____

United States of America

*Plaintiff - Appellee*

v.

Mark A. Skoda

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: November 16, 2012
Filed: February 13, 2013
[Published]

_____

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Mark Allen Skoda was convicted of conspiring to manufacture 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine,

in violation of 21 U.S.C. §§ 841 and 846. The district court[1] sentenced him to 292 months' imprisonment. Skoda appeals his conviction.

On February 22, 2011, Deputy Dennis Guthard was patrolling an area including a strip mall and commercial storage business near a home. In the area around the home, which he believed was vacant, Guthard recognized Steve Bargen's van on a gravel drive leading down a hill to an open shed. Guthard had previously seen Bargen running power into one of the storage units. Bargen had refused to let Guthard check the serial numbers on the power equipment.

Guthard approached the van and noticed a Trailblazer beyond it. Bargen got out of the van, acting like he had been sleeping. Bargen said Skoda had called him (about car trouble) but had since walked off. Guthard saw items associated with meth production near the cars and called for backup. The police contacted Skoda's father, who owned the property. He gave permission to search it. Seeing what looked like a pseudoephedrine pill and empty pseudoephedrine boxes in the Trailblazer, officers searched both vehicles. First, in Bargen's van, they found items associated with meth production, including a jug of transchem muriatic acid. Then, in Skoda's Trailblazer, they found similar items.

Skoda moved to suppress evidence found at the property and in his Trailblazer. United States Magistrate Judge Cheryl R. Zwart ruled that the evidence should not be suppressed. The district court adopted her findings and denied Skoda's motion. At trial, various witnesses testified to the existence and scope of a meth conspiracy run by Skoda.

---

[1]The Honorable Richard G. Kopf, United States District Court for the District of Nebraska

Skoda argues that the district court should have invalidated the searches. "In an appeal from a district court's denial of a motion to suppress evidence, this court reviews factual findings for clear error, and questions of constitutional law *de novo*." *United States v. Hollins*, 685 F.3d 703, 705 (8th Cir. 2012). "We will affirm the denial of a suppression motion unless we find that the decision is unsupported by the evidence, based on an erroneous view of the law, or the Court is left with a firm conviction that a mistake has been made." *United States v. Riley*, 684 F.3d 758, 762 (8th Cir. 2012) (internal quotation marks omitted).

The Fourth Amendment protects against "unreasonable searches and seizures." The rights it provides are personal and may not be vicariously asserted. *United States v. Ruiz-Zarate*, 678 F.3d 683, 689 (8th Cir. 2012), *cert. denied*, 133 S. Ct. 454 (2012). "Thus, to challenge a search or seizure under the Fourth Amendment, the defendant must show that (1) he has a reasonable expectation of privacy in the areas searched or the items seized, and (2) society is prepared to accept the expectation of privacy as objectively reasonable." *Id.* (internal quotation marks omitted).

Skoda contends that he had a reasonable expectation of privacy in the property because it was owned by family and in a remote location. Skoda had no legitimate expectation of privacy in the property, because he had no ownership or possessory interest. *See United States v. Sturgis*, 238 F.3d 956 958-59 (8th Cir. 2001) (defendant had no expectation of privacy in another's motel room, and which he visited solely for the commercial purpose of distributing controlled substances); *United States v. Hoey*, 983 F.2d 890, 892-93 (8th Cir. 1993) (defendant had no expectation of privacy in an apartment after she abandoned it). The fact it belonged to his father is irrelevant; defendants have no expectation of privacy in a parent's home when they do not live there. *See United States v. Beasley*, 688 F.3d 523, 531 (8th Cir. 2012) (defendant had no expectation of privacy in his mother's home, where he did not live). While the remoteness of an area from a home may be relevant to the

reasonableness of a search, the remoteness of the home itself is not. Further, Skoda's father expressly permitted police to search the property.

Skoda also argues that officers lacked sufficient cause to search his Trailblazer. "Officers may search a vehicle without a warrant if they have probable cause to believe the vehicle contains contraband." *United States v. Coleman*, 700 F.3d 329, 336 (8th Cir. 2012). "Probable cause exists where there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Donnelly*, 475 F.3d 946, 954 (8th Cir. 2012), *quoting Illinois v. Gates*, 462 U.S. 213, 238 (1983). "In determining whether an officer had probable cause to search, courts apply a common sense approach and consider all relevant circumstances." *United States v. Farnell*, 701 F.3d 256, 264 (8th Cir. 2012).

The circumstances here indicated a fair probability that contraband or evidence of a crime would be found in the Trailblazer. It was late at night in a remote area and the suspiciousness of Bargen's presence was compounded by his story about Skoda calling for help and then walking away. Implements of meth production lay near the cars, including a lithium battery shell casing, pliers, lithium strips, tinfoil, and a gas can with a plastic tube coming out of it. Police saw a red tablet that looked like pseudoephedrine in the car, along with a bag containing pseudoephedrine boxes on the floorboard. *See United States v. Fladten*, 230 F.3d 1083, 1086 (8th Cir. 2000) (probable cause to search vehicle existed where it was parked in the driveway of a house where evidence of drug-related activity was found and an item commonly used in meth production was in plain view in the vehicle). Further, the other implements of meth production found in Bargen's van increased the probability that contraband or evidence of a crime was in Skoda's Trailblazer.

Skoda also contests the sufficiency of the evidence to convict him beyond a reasonable doubt. He contends that there was insufficient evidence that his operation

"was of a scope significant enough to produce 500 grams or more of methamphetamine."

"We review de novo sufficiency of the evidence challenges, viewing the evidence most favorably to the jury verdict, resolving conflicts in favor of the verdict, and giving it the benefit of all reasonable inferences." *United States v. Lee*, 687 F.3d 935, 940 (8th Cir. 2012) (internal quotation marks omitted). "To establish that a defendant conspired to distribute drugs under 21 U.S.C. § 846, the government must prove: (1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *United States v. Shakur*, 691 F.3d 979, 989 (8th Cir. 2012).

Ample evidence showed a conspiracy and Skoda's prominent role in it. A girlfriend testified that she and others helped Skoda acquire ingredients, and that she saw Skoda and Bargen making meth 40 or 50 times. Bargen testified he used meth with Skoda, and that he and others got ingredients for him. Bargen said that he assisted Skoda in stealing anhydrous ammonia between 30 and 50 times, eventually helping him manufacture the drug. He estimated that they made it once or twice a week from the summer of 2009 to February 2011. Bargen's nephew testified that he and his friends, as well as his uncle's girlfriend, bought pseudoephedrine for Bargen on multiple occasions. Another girlfriend testified she bought pesudoephedrine for Skoda in exchange for meth. She testified that between 10 and 20 times, she smelled, or was told by Skoda that he was manufacturing, the drug. An officer testified that, based on evidence of the amount of pseudoephedrine purchased by Skoda and the others, the conspiracy could have produced around 635 grams of meth. A girlfriend testified that more than 500 grams of it were probably made by Skoda between the summer of 2009 and spring of 2010.

Skoda attacks the credibility of these witnesses as "persons with histories of drug use and addiction who were looking to reduce their sentences or who had struck a plea deal by testifying against Skoda." To the contrary:

> This court does not weigh the credibility of the witnesses or the evidence. The jury has the sole responsibility to resolve conflicts or contradictions in testimony, and credibility determinations are resolved in favor of the verdict. We reverse only if no reasonable jury could have found guilt beyond a reasonable doubt.

*United States v. Gray*, 700 F.3d 377, 378 (8th Cir. 2012) (internal quotation marks and citations omitted). The witnesses' backgrounds and incentives were readily apparently to the jury, which believed the testimony. Skoda has not shown that it was unreasonable for the jury to do so.

The judgment of the district court is affirmed.

_____