# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00785-CR

**Genero Jeffery Jerome Sauls, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 426TH DISTRICT COURT OF BELL COUNTY
### NO. 78988, THE HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Genero Jeffery Jerome Sauls pleaded no contest to the offense of possession of marijuana in an amount five pounds or less but more than four ounces. *See* Tex. Health & Safety Code § 481.121(b)(3). The district court placed Sauls on deferred-adjudication community supervision for five years. In a single issue on appeal, Sauls asserts that the district court abused its discretion by denying his motion to suppress. We will affirm the district court's order of deferred adjudication.

## BACKGROUND

At the suppression hearing, Detective Garrett Alton of the Temple Police Department testified that on January 26, 2018, at approximately 8:49 p.m., he and other officers executed a "no-knock" search warrant for firearms at a Temple residence at 513 South 16th Street ("513"). Alton was stationed behind another residence three houses down the road at 519

South 16th Street ("519"). Alton's role was to "secure the perimeter whenever the SWAT team reaches the door to make sure that no one runs from the residence or from the area that may have been involved in the search warrant." Alton testified that the officers had "watched [513] for several hours" and that they had seen "several people [go] in and out of the house." Alton added that "[i]t was unknown how many people were at the house" but that "[p]rior to that day, we had seen nine to ten people going in and out of the house."

The officers executed the warrant at 513 using a "flash bang device," which Alton described as a "very loud bang," "almost like a bomb that goes off." After the device went off, Alton heard a noise coming from the front of 519. The noise "sounded like grass, like someone running." Alton turned and shined his flashlight in the direction of the noise and saw a man, later identified as Sauls, running from the front of 519 toward Alton. Alton recounted what happened next:

> When I turned and I shined my light onto him, I noticed he looked up at me for a second. I noticed he had a white plastic bag in his hands. He tossed it into the trash can directly next to the porch—side porch that was between me and him. The trash can was actually on his side of the porch. Once he tossed it in there, I gave him commands to get down on the ground. He did comply. He went down onto the ground. That's when Detective Smith heard me yelling, heard me doing commands. . . . Once [Smith] helped me—he got over there to help me detain him, I checked the trash can and that's when I found the marijuana.

Alton testified that he did not tell Sauls to get on the ground until after Sauls had "tossed" the plastic bag into the trash can, which was "sitting next to" the house. Alton added that the trash can did not have a lid on top of it, and the marijuana was plainly visible inside the white plastic bag when he looked inside the trash can. He testified, "As soon as I looked at it, I saw what it was." Alton then directed Detective Smith to arrest Sauls.

2

The only other witness to testify at the suppression hearing was Sauls, who provided brief testimony acknowledging that he did not live at 519 and that the trash can did not belong to him. Rather, it belonged to his girlfriend's aunt, who lived at the residence. When defense counsel asked Sauls if he and his girlfriend were "overnight guests at the house that night," Sauls testified, "Yes, we were." When defense counsel next asked Sauls if they were "frequently" overnight guests at the residence, Sauls answered, "Yes, absolutely." Sauls added that he and his girlfriend "spend quite a bit of time over there."

After taking the matter under advisement, the district court denied the motion to suppress. Sauls later pleaded no contest to the charged offense but reserved his right to appeal the denial of his motion to suppress. This appeal followed.

**STANDARD OF REVIEW**

"We review a ruling on a motion to suppress using a bifurcated standard of review." *Sims v. State*, 569 S.W.3d 634, 640 (Tex. Crim. App. 2019) (citing *Guzman v. State*, 955 S.W.2d 85, 87-91 (Tex. Crim. App. 1997)). "A trial court's findings of historical fact and determinations of mixed questions of law and fact that turn on credibility and demeanor are afforded almost total deference if they are reasonably supported by the record." *Id*. "We review a trial court's determination of legal questions and its application of the law to facts that do not turn upon a determination of witness credibility and demeanor de novo." *State v. Duran*, 396 S.W.3d 563, 570 (Tex. Crim. App. 2013) (quoting *Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006)).

"When the trial court does not make explicit findings of fact, as in the case before us, we view the evidence in the light most favorable to the trial court's ruling and assume the

trial court made implicit findings of fact supported by the record." *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018). "We will sustain the ruling of the trial court if it is correct under any applicable theory of law." *Id*.

## ANALYSIS

In his sole issue on appeal, Sauls asserts that the district court should have granted his motion to suppress because the police obtained the marijuana in violation of the Fourth Amendment to the United States Constitution. *See* U.S. Const. amend. IV. Specifically, he contends that Alton did not have probable cause to arrest Sauls at the time Alton first encountered him. Therefore, according to Sauls, Alton's action in ordering him to the ground was an illegal "arrest," and the marijuana that was found following that arrest should have been suppressed as "fruit of the poisonous tree." *See Monge v. State*, 315 S.W.3d 35, 40 (Tex. Crim. App. 2010) ("The 'fruit of the poisonous tree' doctrine generally precludes the use of evidence, both direct and indirect, obtained following an illegal arrest.")

Assuming without deciding that Alton ordering Sauls to the ground constituted an arrest that was not supported by probable cause (a contention that the State disputes),[1] the record supports a finding that before being ordered to the ground, Sauls threw the marijuana into a trash can that he did not own, while at a residence where he did not live. Thus, as a threshold matter, we must determine if Sauls has standing to challenge the search of the trash can and the seizure of the marijuana found within it. *See Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *Matthews v.*

---

[1] The State argues that Sauls being ordered to the ground was not an arrest but a temporary detention requiring reasonable suspicion rather than probable cause and that Sauls was not arrested until after Alton found the marijuana in the trash can.

4

*State*, 431 S.W.3d 596, 606 (Tex. Crim. App. 2014); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).

"[A] fundamental purpose of the Fourth Amendment is to safeguard individuals from unreasonable government invasions of legitimate privacy interests, and not simply those interests found inside the four walls of the home." *United States v. Chadwick*, 433 U.S. 1, 11 (1977). However, the rights protected by the Fourth Amendment "are personal," and "an accused must show that the search violated his, rather than a third party's, legitimate expectation of privacy." *Matthews*, 431 S.W.3d at 606; *see State v. Elrod*, 395 S.W.3d 869, 877 (Tex. App.—Austin 2013, no pet.) ("A defendant seeking to suppress evidence on the ground that it was obtained in violation of the Fourth Amendment . . . must show that he personally had a reasonable expectation of privacy that the government violated."). Accordingly, "[a]n accused has standing . . . to challenge the admission of evidence obtained by a governmental intrusion only if he had a legitimate expectation of privacy in the place invaded." *Villarreal*, 935 S.W.2d 138; *see also Kane v. State*, 458 S.W.3d 180, 183-84 (Tex. App.—San Antonio 2015, pet. ref'd) ("To prevail on an alleged exclusionary rule violation, a defendant must first establish his standing to challenge the admission of the evidence obtained by proof that he had a legitimate expectation of privacy in the place invaded.").

"[T]he accused, because he has greater access to the relevant evidence, has the burden of proving facts establishing a legitimate expectation of privacy." *Villarreal*, 935 S.W.2d at 138; *see Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980). The accused satisfies this burden "by establishing that he had a subjective expectation of privacy in the place invaded that society is prepared to recognize as reasonable." *Granados v. State*, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002). "Several factors are relevant to determining whether a given claim of privacy is

5

objectively reasonable: (1) whether the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, prior to the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy." *Id*. "This list of factors is not exhaustive, however, and none is dispositive of a particular assertion of privacy; rather, we examine the circumstances surrounding the search in their totality." *Id*.; *see Criner v. State*, No. 03-18-00528-CR, 2019 WL 6042277, at *6 (Tex. App.—Austin Nov. 15, 2019, pet. ref'd) (mem. op., not designated for publication).

Here, the circumstances include that Sauls threw the plastic bag containing the marijuana into an outdoor trash can. Alton testified that the trash can did not have a lid on it and that the marijuana was plainly visible in the bag when he looked inside the trash can. This evidence would support a finding that Sauls did not have a reasonable expectation of privacy in the contents of the bag after he threw it in the trash. *See California v. Greenwood*, 486 U.S. 35, 40 (1988) (holding that defendant had no reasonable expectation of privacy in discarded trash); *Levario v. State*, 964 S.W.2d 290, 296 (Tex. App.—El Paso 1997, no pet.) (concluding that defendant had no reasonable expectation of privacy in discarded trash even when trash can remained within curtilage of home); *see also United States v. Shanks*, 97 F.3d 977, 979-80 (7th Cir. 1996) (explaining that "Fourth Amendment issues do not depend solely on curtilage" and that "the relevant inquiry is whether the garbage cans were so readily accessible to the public that they exposed the contents to the public for Fourth Amendment purposes" (internal quotation omitted)). Also, Alton testified that Sauls threw the bag into the trash can before Alton ordered him to the ground, which would support a finding that Sauls abandoned the marijuana

6

voluntarily and lacked standing to challenge the search for that reason. *See Swearingen v. State*, 101 S.W.3d 89, 101 (Tex. Crim. App. 2003) ("[W]hen a defendant voluntarily abandons property, he lacks standing to contest the reasonableness of the search of the abandoned property."); *McDuff v. State*, 939 S.W.2d 607, 616 (Tex. Crim. App. 1997) ("Abandonment of property occurs if the defendant intended to abandon the property and his decision to abandon it was not due to police misconduct."); *Hollingsworth v. State*, 15 S.W.3d 586, 593 (Tex. App.—Austin 2000, no pet.) (concluding that defendant voluntarily abandoned cocaine when he spit it out of his mouth before officer detained him).

Additionally, the trash can did not belong to Sauls, and it was located outside a house where Sauls did not reside. Thus, the district court would not have abused its discretion in finding that Sauls lacked any reasonable expectation of privacy there. *See Villarreal*, 935 S.W.2d at 139 (concluding that defendant had no reasonable expectation of privacy at residence where he did not live because there was "no evidence that appellant had a property or possessory interest in, or unrestricted access to, the [] residence" or that defendant "had dominion or control over the residence, or the right to exclude others"); *Thomas v. State*, 681 S.W.2d 672, 676 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd) (concluding that defendant had no standing to challenge validity of search of house when he failed to show that "he had a right of ownership or possession of the house"); *see also United States v. Skoda*, 705 F.3d 834, 837 (8th Cir. 2013) (holding that defendant "had no legitimate expectation of privacy in the property" where he did not live "because he had no ownership or possessory interest" there; collecting cases with similar holdings). Although Sauls answered in the affirmative when defense counsel asked him if he was an "overnight guest" of his girlfriend's aunt on the night of his arrest, *see Minnesota v. Olson*, 495 U.S. 91, 98 (1990) (holding that "an overnight guest has a legitimate expectation of

7

privacy in his host's home"), the district court was not required to believe Sauls's conclusory testimony, *see Villarreal*, 935 S.W.2d at 138 (explaining that at suppression hearing, "the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony" because "the trial court, who observes the demeanor and appearance of the witnesses, is in a better position to determine their credibility than the appellate court is by reading their testimony as it appears in the record"); *see also State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) ("[T]he judge may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted."). We also find it significant that neither Sauls's girlfriend nor his girlfriend's aunt testified at the suppression hearing to corroborate Sauls's claims, and Sauls did not testify to any specific facts that would support his purported status as an "overnight guest." *See Minnesota v. Carter*, 525 U.S. 83, 90 (1998) (holding that although "an overnight guest in a home may claim the protection of the Fourth Amendment," "one who is merely present with the consent of the householder may not"); *cf. Jones v. United States*, 362 U.S. 257, 259 (1960) (concluding that defendant had standing to challenge search of apartment that did not belong to him because he "had been given the use of the apartment by a friend," "had clothing in the apartment, had slept there 'maybe a night,' and at the time was the sole occupant of the apartment"). Viewing the above circumstances in their totality and in the light most favorable to the district court's ruling, we conclude that they support a finding that Sauls lacked standing to challenge the search and seizure of the evidence and that the district court would not have abused its discretion in denying the motion to suppress on that basis. *See Rakas*, 439 U.S. at 148; *Granados*, 85 S.W.3d at 226; *Villarreal*, 935 S.W.2d at 138-39; *Hollis v. State*, 219 S.W.3d 446, 457, 458 (Tex. App.—Austin 2007, no pet.) *see also Criner*, 2019 WL 6042277, at *8.

We overrule Sauls's sole issue on appeal.

8

## CONCLUSION

We affirm the district court's order of deferred adjudication.

_____

Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Baker and Triana

Affirmed

Filed:   August 31, 2020

Do Not Publish