# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-1582
_____

United States of America

*Plaintiff - Appellee*

v.

Roberto Antwan Williams

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 25, 2024
Filed: March 18, 2025
_____

Before LOKEN, SMITH, and GRASZ, Circuit Judges.
_____

LOKEN, Circuit Judge.

A jury convicted Roberto Williams of two counts of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court[1]

---

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota, now retired, ruled on pretrial motions, the denial of which Williams appeals, and presided over the trial.

sentenced him to concurrent 120-month sentences on each count. The two felon-in-possession charges arose out of separate incidents. On July 31, 2020, St. Cloud police officers, investigating a reported assault with a firearm and attempted robbery, stopped a car the victim reported being at the scene. Williams was in the passenger seat; his fiancée, Bianca Ellison, was in the driver's seat. A search uncovered a 9mm Smith & Wesson handgun, a magazine, and ammunition in the glove compartment. On November 13, Ellison brought her five-year-old son to the St. Cloud Hospital after sustaining a fatal gunshot wound to the head at the home of Ellison and Williams. A security camera captured Williams placing a black backpack in a garbage bin outside the home. A warrant search recovered two firearms in the garbage bin.

Williams appeals his conviction, raising four issues. We will separately discuss the first three in Parts II, III, and IV of this opinion -- denial of Williams's motion to suppress evidence obtained during the July 31 stop; denial of his motion to suppress evidence from an allegedly overbroad warrant search of his cell phone in November 2020; and denial of his motion to exclude evidence of five prior Illinois convictions because they were constitutionally invalid and could not be predicates for the § 922(g) felon-in-possession offenses.

The fourth issue Williams raises on appeal -- denial of his pretrial motion to dismiss because § 922(g)(1) violates the Second Amendment right to keep and bear arms -- is barred by controlling Eighth Circuit precedent. The issue has generated substantial conflict among the circuit courts and among members of this court. The Supreme Court remanded our two initial decisions rejecting the claim for further consideration in light of its decision in United States v. Rahimi, 602 U.S. 680 (2024). On remand, our panels reaffirmed the constitutionality of § 922(g)(1). On November 5, 2024, the court with four dissenters denied petitions for rehearing en banc of the panel decisions. United States v. Jackson, 121 F.4th 656 (8th Cir. 2024); United States v. Cunningham, 121 F.4th 1155 (8th Cir. 2024). These recent decisions have not ended the debate nationwide and are potentially subject to further Supreme Court

review. But they are controlling precedent for our panel. We affirm the district court's denial of Williams's motion to dismiss.

## I. Background

In the early morning hours on July 31, 2020, a victim reported an assault with a firearm and attempted robbery. St. Cloud Police Officer Benjamin Eckberg arrived at the scene and met the victim, Ousman Bah, near the site of the assault. Although Bah spoke quickly with a thick accent, Eckberg understood that a man grabbed Bah and that he saw a firearm during the altercation. Bah told Eckberg that a silver SUV, then stopped at a nearby red light, was at the scene during the assault. Officer Eckberg radioed Sergeant Roger Baumann in a nearby patrol vehicle to stop the SUV because it was leaving the area and the victim said that witnesses or persons involved in the assault may be inside.

Baumann caught the SUV, turned on his emergency lights, and the SUV pulled over. Williams was in the front passenger seat, with his hands in the air shaking. Ellison, in the driver's seat, told Baumann they had come from a nearby gas station. Baumann had observed the SUV drive past the gas station without stopping. He smelled a strong odor of marijuana, and Williams matched Bah's description of the assailant that Officer Eckberg had radioed to Baumann shortly after the stop.

Baumann directed Officer Dwayne Bergsnev, who had arrived at the scene, to detain Williams. When Baumann observed a small plastic bag on the driver's side floorboard, which he believed to be narcotics, he detained Ellison. Eckberg brought Bah to the scene. Bah identified Williams as the assailant. The officers arrested Williams and searched the SUV, finding the Smith & Wesson handgun and ammunition and bags containing heroin, cocaine base, and ecstacy pills in the sunglasses compartment. Laboratory testing of the handgun revealed the major DNA

profile matched that of Williams. Possession of the Smith & Wesson handgun was the basis for Count 1 of the indictment.

On November 13, 2020, St. Cloud Hospital reported to the St. Cloud Police Department that Ellison brought her five-year-old son there after suffering a gunshot wound to the head. He was pronounced dead at the hospital. Investigating officers interviewed Williams, Ellison, and Williams's daughter, who told them she found a purple and black firearm next to Ellison's son when she discovered him in the home. Williams told officers he accompanied Ellison and her son to the hospital. A neighbor's security camera showed that he stayed at the house and, after Ellison left, placed a black backpack in a garbage bin and covered it with a bag of trash. A warrant search recovered two firearms in the garbage bin; cocaine, ecstacy pills, and synthetic marijuana in the garbage bin and the home; and drug paraphernalia and digital scales in a bedroom. One of the firearms, a 9mm Taurus handgun, matched the daughter's description of the gun she found. Possession of the two guns was the basis for Count 2.

On November 16, St. Cloud Police Investigator Ryan Ebert applied for a warrant to search Williams's LG smartphone for evidence he possessed the gun involved in the November 13 shooting. A Stearns County District Court Judge issued the warrant that day, authorizing officers to search the LG smartphone and seize "[a]ny and all information stored within the cellular phone," including but not limited to email addresses, calls, text messages, photographs, videos, browsing history, and "all information as it relates to social media communication and any data included within stored applications . . . between 10-22-20 and 11-16-20." Officers discovered a photograph of the purple and black Taurus handgun found in the garbage bin. A text message said, "My new toy."

Williams's federal felon-in-possession offenses apply to any person "who has been convicted in any court of, a crime punishable by imprisonment for a term

exceeding one year." 18 U.S.C. § 922(g)(1). Williams has five prior Illinois felony convictions the government alleged were requisite predicate offenses. Prior to trial, Williams filed a motion in limine to exclude evidence of the five convictions because they are now invalid under Illinois law. The district court denied this motion as an impermissible collateral attack on a state conviction in federal court. See Lewis v. United States, 445 U.S. 55, 56, 65-67 (1980); United States v. Bena, 664 F.3d 1180, 1185 (8th Cir. 2011).

## II. The SUV Search

Williams argues that the July 2020 stop of the SUV violated his Fourth Amendment right "to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV. The district court concluded that the stop was supported by reasonable suspicion of criminal activity. "We review the denial of a motion to suppress de novo but the underlying factual determinations for clear error, giving due weight to inferences drawn by law enforcement officials." United States v. Tamayo-Baez, 820 F.3d 308, 312 (8th Cir.) (quotation omitted), cert. denied, 580 U.S. 997 (2016).

"A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle. . . . [T]o justify this type of seizure, officers need only 'reasonable suspicion' -- that is, a particularized and objective basis for suspecting the particular person stopped of breaking the law." Heien v. North Carolina, 574 U.S. 54, 60 (2014) (quotation omitted). An officer has reasonable suspicion when he "is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." United States v. Hanel, 993 F.3d 540, 543 (8th Cir. 2021) (quotation omitted). "[T]he Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." Tamayo-Baez, 820 F.3d at 312 (quotation omitted).

Williams argues the district court erred because the sole basis for Sergeant Baumann's stop was Bah's statement to Officer Eckberg that there were potential witnesses to the assault in the SUV. Williams asserts that seizing witnesses to a crime "is a clearly established constitutional violation," relying on a statement in Davis v. Dawson, a § 1983 action in which defendants asserted the defense of qualified immunity: "There is also a robust consensus that seizing witnesses to a crime in similar circumstances is a clearly established constitutional violation." 33 F.4th 993, 999 (8th Cir. 2022) (citations omitted). But Williams would have us ignore the phrase "in similar circumstances." In Davis, "the officers admit[ted] there was no probable cause to believe the witnesses had committed a crime"; they were detained for over three hours and interviewed solely as "witnesses to a homicide" and "never suspects." Id. at 996, 998.

Here, the officers did not stop the SUV solely because its occupants were witnesses. The district court credited Officer Eckberg's testimony that victim Bah, in his initial, frenetic recount of a terrifying assault, communicated that there were either "witnesses or other involved parties" inside the SUV. We agree this gave Officer Eckberg reasonable suspicion to order Sergeant Baumann to make an investigatory stop of a vehicle whose occupants had been linked to a criminal incident.[2] Reviewing courts "must look at the totality of the circumstances" and must "allow[] officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." United States v. Arvizu, 534 U.S. 266, 273 (2002); cf. United States v. Roberts, 787 F.3d 1204, 1209-10 (8th Cir. 2015) (upholding investigatory stop of a vehicle

---

[2]"When multiple officers are involved in an investigation, probable cause [or reasonable suspicion] may be based on their collective knowledge and need not be based solely on the information within the knowledge of the arresting officer as long as there is some degree of communication." United States v. Robinson, 664 F.3d 701, 703 (8th Cir. 2011) (quotation omitted).

seven blocks from the scene of a shooting based on witness accounts that the vehicle "may have been involved in the shooting").

The district court credited Officer Eckberg's testimony. "We give great deference to a lower court's credibility determinations because the assessment of a witness's credibility is the province of the trial court." United States v. Wright, 512 F.3d 466, 472 (8th Cir. 2008) (quotation omitted). The suppression hearing record contains no "extrinsic evidence that contradicts [Officer Eckberg's] story," nor is the story "so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it." United States v. Harper, 787 F.3d 910, 914 (8th Cir. 2015) (quotation omitted). The district court did not err in concluding that Eckberg had reasonable suspicion to order the traffic stop.

### III. The Cell Phone Search

Williams's motion to suppress conceded the warrant application and affidavit provided a sufficient basis for the issuing magistrate to find probable cause. Relying on an earlier District of Minnesota decision suppressing evidence from a cell phone search, Williams instead argued that this cell phone warrant authorized a "general exploratory search," violating the Fourth Amendment requirement that a warrant "particularly describ[e] . . . the persons or things to be seized." The district court, acknowledging that the warrant limited the files to be searched to a three-week time frame, nonetheless concluded that the warrant "was insufficiently particular and unconstitutionally overbroad" because the files to be searched were not limited to information related to felony gun and drug possession. However, the court denied the motion to suppress because "Investigator Ebert relied on it in good faith, and therefore, the evidence should not be suppressed under the Leon good faith exception." Williams appeals that ruling.

-7-

The <u>Leon</u> good faith rule provides that evidence obtained in executing a warrant will not be excluded at trial "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," even if the warrant is later invalidated. <u>United States v. Leon</u>, 468 U.S. 897, 920 (1984). "[S]uppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." <u>Id.</u> at 926. Applying the <u>Leon</u> rule, we recognize four circumstances that preclude a finding of good faith:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

<u>United States v. Cannon</u>, 703 F.3d 407, 412 (8th Cir.) (quotation omitted, emphasis in original), <u>cert. denied</u>, 569 U.S. 987 (2013).

On appeal, Williams argues that no reasonable officer would believe that a warrant authorizing seizure of "any and all" information on his phone was consistent with the Fourth Amendment. He argues the use of "any and all" language, followed by a non-exclusive list of broad categories of electronically stored information, authorizes the kind of "general, exploratory rummaging" prohibited by the Fourth Amendment. <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 467 (1971). "In assessing the objective reasonableness of a police officer's belief in the validity of a warrant, we look to the totality of the circumstances, including any information known to the officer but not presented to the issuing judge." <u>United States v. Saddler</u>, 19 F.4th

1035, 1040 (8th Cir. 2021) (quotation omitted); see United States v. Henderson, 416 F.3d 686, 695 (8th Cir. 2005).

Here, as the district court emphasized, Investigator Ebert both requested the warrant and examined the cell phone contents. "This fact is significant because in assessing whether reliance on a search warrant was objectively reasonable under the totality of the circumstances, it is appropriate to take into account the knowledge that an officer in the searching officer's position would have possessed." United States v. Curry, 911 F.2d 72, 78 (8th Cir. 1990), cert. denied, 498 U.S. 1094 (1991); see Massachusetts v. Sheppard, 468 U.S. 981, 989 n.6 (1984) ("[T]he officer who directed the search[] knew what items were listed in the affidavit presented to the judge, and he had good reason to believe that the warrant authorized the seizure of those items.").

Investigator Ebert's affidavit in support of the warrant application included more particularized language about the scope of the requested search and explained, based on his experience, the common practice of sharing photos, videos, and messages about guns and drugs over platforms such as Facebook, Facebook Messenger, Snapchat, and traditional text messaging. We agree with the district court that it is reasonable to believe that Ebert conducted a more circumscribed search than the language of the warrant literally authorized. Williams asserts that Ebert deliberately chose not to limit the scope of the warrant. But there is no evidence suggesting Ebert failed to act in good faith or improperly took advantage of the lack of particularity in executing the warrant. Ebert testified that he simply used standard department language that had been approved on many previous occasions.

Accordingly, we agree with the district court that the Leon good faith exception applies and affirm the denial of Williams's motion to suppress evidence seized from the warrant search of his cell phone. We need not consider, and take no position on

whether the district court correctly concluded that the cell phone warrant "was insufficiently particular and unconstitutionally overbroad."

## IV. The Prior Illinois Felony Convictions

Williams argues the district court erred in denying his motion to exclude evidence of his five prior Illinois convictions because they are no longer valid predicate felony convictions to support a § 922(g)(1) conviction. Williams was convicted in 2004 and 2005 of aggravated unlawful use of a weapon ("AUUW"). The Supreme Court of Illinois and the Seventh Circuit later declared unconstitutional under the Second Amendment the portion of the Illinois AUUW statute he was convicted of violating, 720 Ill. Comp. Stat. Ann. 5/24-1.6(a)(1), (a)(3)(A) (West 2005). See People v. Aguilar, 2 N.E.3d 321, 327 (Ill. 2013); Moore v. Madigan, 702 F.3d 933, 942 (7th Cir. 2012). Therefore, Williams asserts, these convictions are void *ab initio* and cannot disqualify him from possessing a firearm under § 922(g)(1). He also argues that his 2008 conviction under a separate sentencing enhancement of the AUUW statute, 720 Ill. Comp. Stat. Ann. 5/24-1.6(d) (West 2007), is tied to the later-invalidated provision and cannot serve as a predicate offense. And his 2010 and 2017 convictions for unlawful use or possession of a weapon by a felon in violation of 720 Ill. Comp. Stat. Ann. 5/24-1.1(a) (West 2010) are invalid because they were predicated on the prior invalid AUUW convictions. We review *de novo* the question of whether a prior conviction qualifies as a predicate felony for the purpose of § 922(g). United States v. Miller, 678 F.3d 649, 651 (8th Cir. 2012).

The district court concluded Williams's motion in limine was an impermissible collateral attack on an underlying state conviction in federal court. In Lewis, the Supreme Court held that a prior state felony conviction obtained in violation of the defendant's Sixth Amendment right to counsel could nevertheless serve as a predicate felony for the precursor to § 922(g)(1). 445 U.S. at 56, 65-67. The Court explained that "the fact of a felony conviction imposes a firearm disability until the conviction

is vacated or the felon is relieved of his disability by some affirmative action . . . . No exception . . . is made for a person whose outstanding felony conviction ultimately might turn out to be invalid for any reason." Id. at 60-62. "Congress clearly intended that the defendant clear his status *before* obtaining a firearm." Id. at 64. Therefore, a defendant whose conviction had not been previously overturned or vacated may not pursue a new form of collateral attack in a federal firearms prosecution. Id. at 67.

Following Lewis, we have rejected attempts by defendants to collaterally attack their predicate state convictions in defending prosecutions under § 922. See, e.g., Bena, 664 F.3d at 1185-86 (8th Cir. 2011) (rejecting as an impermissible collateral attack a constitutional challenge to a predicate no-contact order in a § 922(g)(8) prosecution); United States v. Elliott, 128 F.3d 671, 672 (8th Cir. 1997) (applying Lewis to foreclose collateral attack in a § 922(g)(1) prosecution); United States v. Dorsch, 363 F.3d 784, 787-88 (8th Cir. 2004) (applying Lewis to bar challenge to predicate prior commitment element in a § 922(g)(4) prosecution).

Williams argues that Lewis was superseded by a subsequent amendment to the definition of "crime punishable by imprisonment for a term exceeding one year" in § 922(g)(1). In Dickerson v. New Banner Institute, Inc., the Supreme Court held that whether one has been "convicted" for the purposes of § 922 "is necessarily . . . a question of federal, not state, law, despite the fact that the predicate offense and its punishment are defined by the law of the State." 460 U.S. 103, 111-12 (1983). Therefore, Iowa's expunction of the defendant's prior conviction did not nullify the conviction for the purposes of the firearms prohibitions in § 922(g)(1) and (h)(1). Id. at 114-15. In 1986, Congress amended the definition of "crime punishable by imprisonment for a term exceeding one year" in the Firearms Owners' Protection Act:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for

which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.[3]

Here, Williams argues, Illinois law is the "law of the jurisdiction in which the proceedings were held." Following its decision in Aguilar declaring § 5/24-1.6(a)(1), (a)(3)(A) unconstitutional, the Supreme Court of Illinois stated that this provision was "void *ab initio*; that is, it is as if the law had never been passed." In re N.G., 115 N.E.3d 102, 123 (Ill. 2018). The court stated that a conviction based on this unconstitutional statute can have "no legal force or effect, and can be given none," but it also acknowledged that "nullification is not self-executing. Judicial action is necessary." Id. (citation omitted).

This clarification in N.G. confirms that Williams's prior convictions were not automatically vacated and therefore remained valid predicate felony convictions for his federal felon-in-possession charges. A person challenging a conviction under an invalid statute still must "raise[] his or her challenge through an appropriate pleading in a court possessing jurisdiction over the parties and the case." N.G., 115 N.E.3d at 125. Therefore, under Lewis and our precedent applying that decision, we cannot entertain the collateral attack on Williams's Illinois convictions. Section 921(a)(20) did not displace or overrule Lewis. Its analysis continues to apply in felon-in-possession cases, as we recognized in Bena, Elliott, and Dorsch. Construing § 921(a)(20) in Custis v. United States, 511 U.S. 485, 491 (1994), the Supreme Court held that "[t]he provision that a court may not count a conviction 'which has been . . . set aside' creates a clear negative implication that courts *may* count a conviction that has *not* been set aside."

---

[3]Pub. L. No. 99-308, § 101(5), 100 Stat. 449, 450 (1986) (codified at 18 U.S.C. § 921(a)(20)).

Williams acknowledged at oral argument that he has yet to take affirmative action to vacate any of the five Illinois convictions. Therefore, he failed to "clear his status *before* obtaining a firearm," Lewis, 445 U.S. at 64, and the Illinois convictions remained outstanding when he violated § 922(g)(1). The Seventh Circuit rejected the same claim in United States v. Thompson, 901 F.3d 785 (7th Cir. 2018), applying Lewis and declining to set aside a plea of guilty to a § 922(g)(1) charge based on a predicate Illinois conviction under the now-unconstitutional AUUW statute here at issue. Thompson "could have filed petition in state court to have his conviction vacated but failed to do so." Id. at 787; see United States v. Marks, 379 F.3d 1114, 1119 (9th Cir. 2004) ("The focus of the inquiry under §§ 921(a)(20) and 922(g)(1) is whether someone has been convicted of a felony under state law, not whether that conviction is constitutionally valid, nor whether it may be used as a predicate conviction for subsequent state prosecutions.").

Applying these authorities, we conclude the district court properly denied Williams's motion in limine because it is an impermissible collateral attack on an underlying state conviction that has not been vacated by an Illinois court with jurisdiction over these state criminal matters.

The judgment of the district court is affirmed.

_____

-13-