# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3517

_____

John Merced Lozano

*Movant - Appellant*

v.

United States of America

*Respondent - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - St. Joseph

_____

Submitted: December 16, 2025
Filed: March 27, 2026

_____

Before GRUENDER, KELLY, and ERICKSON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

In 2005, John Lozano was convicted of multiple federal felonies. Because he had prior convictions, including a Missouri marijuana-related felony conviction, he was a career offender under the sentencing guidelines and was subject to an enhanced advisory sentencing guidelines range. Lozano was sentenced to 322 months' imprisonment. In 2023, Missouri set aside his prior marijuana conviction. Less than one year later, Lozano filed a motion to vacate and correct his sentence

under 28 U.S.C. § 2255, arguing that in light of Missouri's decision, his marijuana conviction should not have counted towards whether he was a career offender under the guidelines. The Government filed a motion to dismiss, which the district court[1] granted. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

In 2005, Lozano pleaded guilty to four federal felony counts.[2] Because of his prior felony convictions, Lozano's Presentence Investigation Report ("PSR") designated him as a career offender. Given this designation, the PSR calculated Lozano's advisory sentencing guidelines range to be 322 to 387 months' imprisonment. The district court adopted this calculation and sentenced Lozano to 322 months' imprisonment. One of Lozano's prior felony convictions was a Missouri marijuana-related conviction. Without that prior conviction, Lozano would not have been a career offender under the guidelines, and therefore he would not have been subject to an enhanced advisory sentencing guidelines range.

In 2022, Missouri ratified a constitutional amendment (the "Amendment") legalizing certain marijuana-related activities and directing state courts to expunge convictions for certain nonviolent marijuana offenses. *See* Mo. Const. art. XIV, § 2.10. Specifically, the Amendment provides that certain marijuana-related activities "are not unlawful and shall not be an offense under state law." Mo. Const. art. XIV, § 2.10(1). The Amendment then provides that: "[a]n expungement order shall be legally effective immediately and . . . the conviction and sentence shall be vacated as legally invalid." Mo. Const. art. XIV, § 2.10(8)(b). Pursuant to the

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

[2]These felonies were: conspiracy to distribute and possess with intent to distribute methamphetamine, 21 U.S.C. § 841(a)(1), (b)(1)(A); being a felon in possession of firearms and ammunition, 18 U.S.C. §§ 922(g)(1), 924(a)(2); carrying firearms during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(I); and criminal forfeiture, 21 U.S.C. § 853.

Amendment, in August 2023, a Missouri court issued an expungement order, vacating Lozano's marijuana conviction.  Less than one year later, Lozano filed a 28 U.S.C § 2255 motion, asking the district court to vacate his federal sentence and resentence him because Missouri had set aside the conviction that had qualified him as a career-offender under the guidelines.[3]  That motion is the subject of this case.

The Government moved to dismiss Lozano's motion.  The Government argued that this motion was "second or successive" because Lozano had previously filed § 2255 motions in 2009 and 2016.  Thus, the Government concluded, to file the motion, Lozano needed to satisfy certain additional statutory requirements, *see* § 2255(h), which he had not done.  The Government also argued that the Missouri expungement order would not have affected Lozano's advisory sentencing guidelines range because Missouri had issued the order not due to innocence, legal error, or constitutional invalidity, but to give Lozano a fresh start.

The district court granted the Government's motion to dismiss, agreeing with the Government that (1) Lozano's motion was second or successive, and (2) the Missouri expungement order would not have affected Lozano's advisory sentencing guidelines range because the order was not based on innocence, legal error, or constitutional invalidity.  We granted a certificate of appealability, enabling Lozano to bring this appeal of the dismissal of his § 2255 motion.[4]  *See* § 2253(c)(1)(B).

## II.  Discussion

As we indicated in the certificate of appealability, Lozano's appeal raises two questions: first, whether his § 2255 motion is "second or successive" and therefore subject to § 2255(h)'s certification requirements; second, whether he is correct that the Missouri expungement order warrants that he be resentenced under § 2255.  We

---

[3]Lozano's motion was timely under § 2255(f)(4).

[4]Contrary to the Government's characterization, our February 26, 2025 order constituted a certificate of appealability.

hold that Lozano's § 2255 motion is not second or successive, but that the Missouri expungement order does not warrant that he be resentenced under § 2255.

## A.

Under § 2255, a prisoner may file a motion to "vacate, set aside, or correct [his] sentence" if the sentence is "subject to collateral attack," such as if it "was imposed in violation of the Constitution or laws of the United States." § 2255(a). Through a § 2255 motion, a prisoner may challenge his sentence if the prisoner was sentenced as a career offender under the guidelines because of a subsequently vacated prior conviction. *See, e.g.*, *Johnson v. United States*, 544 U.S. 295, 298-99, 303 (2005). In his § 2255 motion, Lozano seeks resentencing because his prior marijuana conviction—which made him a career offender under the guidelines— was "vacated as legally invalid" pursuant to the Amendment.

Lozano filed § 2255 motions in 2009 and 2016, making this his third § 2255 motion. If a prisoner's § 2255 motion is a "second or successive" motion, then "a panel of the appropriate court of appeals" must certify that the motion contains either:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

§ 2255(h)(1)-(2). Lozano's current § 2255 motion—which centers on the Amendment and a Missouri court's consequent expungement order—contains neither. Indeed, Lozano does not attempt to argue on appeal that his motion could survive if it were second or successive. Hence, our threshold question is whether Lozano's motion is second or successive.

The district court determined that it was. We review that determination *de novo*. *See United States v. Sellner*, 773 F.3d 927, 931 (8th Cir. 2014). The phrase "second or successive" is "a term of art, which is not self-defining." *Banister v. Davis*, 590 U.S. 504, 511 (2020). The phrase does not simply refer to all § 2255 motions made "second or successively in time" following an initial § 2255 motion. *Id.* Instead, as the Supreme Court instructs us, we interpret this phrase by "explor[ing] historical habeas doctrine and practice" and the purposes underlying the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See id.* at 512. "The statute's design is to further the principles of comity, finality, and federalism." *Panetti v. Quarterman*, 551 U.S. 930, 945 (2007) (citation modified). Its restrictions on successive habeas petitions "constitute a modified res judicata rule, a restraint on what used to be called in habeas corpus practice 'abuse of the writ.'" *See Stewart v. Martinez-Villareal*, 523 U.S. 637, 645 (1998). Those provisions exist to "conserve judicial resources, reduce piecemeal litigation, and lend finality to state court judgments within a reasonable time." *See Banister*, 590 U.S. at 512 (citation modified).

Applying these principles, the Supreme Court in *Panetti* established that a prisoner may raise a newly ripe *Ford* claim "for the first time in a petition filed after the federal courts have already rejected the prisoner's initial habeas application." 551 U.S. at 945. In a *Ford* claim, a prisoner sentenced to death alleges that he is incompetent to be executed because of his current mental condition. *See id.* at 934-35 (citing *Ford v. Wainwright*, 477 U.S. 399, 410 (1986)). A second-in-time application presenting a newly ripe *Ford* claim is not second or successive. *Id.* at 945. This is because "claims of incompetency to be executed remain unripe at early stages of the proceedings," meaning that filing such an application does not constitute "an abuse of the writ." *See id.* at 947. Further, filing such an application does not implicate "AEDPA's concern for finality," because federal courts would be unable to resolve a *Ford* claim at the time of a prisoner's initial habeas application. *See id.* at 946. And "[i]nstructing prisoners to file premature claims, particularly when many of these claims will not be colorable even at a later date, does not

conserve judicial resources, reduce piecemeal litigation, or streamline federal habeas proceedings." *Id.* (citation modified).[5]

Contrary to the Government's position, the Supreme Court's reasoning applies to other newly ripe claims—like Lozano's. As the Supreme Court later noted, *Panetti* created an exception "for a second application raising a claim that would have been unripe had the petitioner presented it in his first application." *See Magwood v. Patterson*, 561 U.S. 320, 332 (2010) (citing *Panetti*, 551 U.S. at 944). Accordingly, we have broadly held—as we do again here—that "a petitioner's § 2255 motion presenting claims that had not yet arisen at the time of his first § 2255 motion [is] not 'second or successive' for purposes of AEDPA." *See Sellner*, 773 F.3d at 930-31; *accord Deroo v. United States*, 709 F.3d 1242, 1244 (8th Cir. 2013) (citing *Singleton v. Norris*, 319 F.3d 1018, 1023 (8th Cir. 2003) (en banc)). Lozano's current claim is based on his 2023 Missouri expungement; it only became ripe years after his previous § 2255 motion. Like a newly ripe *Ford* claim, Lozano's claim "would not be barred under any form of res judicata," because he "brought his claim in a timely fashion, and it has not been ripe for resolution until now." *See Stewart*, 523 U.S. at 645. A court could not have resolved it at the time of his first § 2255 motion. And we must consider the "practical effects" of holding that Lozano's only opportunity to bring his current claim was back when he filed his first § 2255 motion—in 2009. *See Panetti*, 551 U.S. at 945-46. Barring Lozano's claim would "instruct[] prisoners to file premature claims," giving rise to the same litany of judicial-resources concerns discussed in *Panetti*. *See id.* at 946.

---

[5]The Court in *Panetti* also noted that "frivolous" and "last-minute" *Ford* claims "can be dismissed in the regular course," as, "for instance," a *Ford* claimant must make a "threshold preliminary showing" that "his current mental state would bar his execution." 551 U.S. at 946-47, 934. Although other newly ripe claims might not require any threshold preliminary showing, they too can be dismissed in the regular course. Indeed, the Court extended its interpretation of AEDPA to newly ripe claims generally, stating: "[w]e are hesitant to construe [the] statute . . . in a manner that would require unripe (and, often, factually unsupported) claims to be raised as a mere formality, to the benefit of no party." *Id.* at 947.

The Government argues that *Ford* claims are unique because they involve "contingent facts" that "come into existence after sentencing." The Government does not clearly define what contingent facts are, and we have found the term nowhere in AEDPA case law. Nevertheless, we imagine that if any claim involved contingent facts, it would be Lozano's. When Lozano filed his first § 2255 motion in 2009, the fact that Missouri would eventually expunge his prior marijuana conviction was not just unknown to him, but *unknowable* to him. He had no idea when, or if, his conviction would eventually be expunged. Even on the Government's own terms, Lozano's claim falls squarely within the Supreme Court's exception for second-in-time motions containing newly ripe claims.

The Government also argues that, in *Jones v. Hendrix*, 599 U.S. 465 (2023) and *Rivers v. Guerrero*, 605 U.S. 443 (2025), the Supreme Court reversed course from this exception and held that *any* § 2255 motion filed after an initial § 2255 motion is second or successive. In both *Jones* and *Rivers*, a prisoner who had already filed an application for habeas relief filed a subsequent application, and the Court labeled the subsequent application as second or successive. *See* 599 U.S. at 469-71; 605 U.S. at 459. To the Government, these cases indicate that the exception to second and successive claims recognized by *Panetti* no longer remains good law.

But if the Supreme Court overruled the *Panetti* line of cases, it certainly never said so in *Jones* and *Rivers*. In *Jones*, the Court evaluated the AEDPA provisions restricting second or successive motions. *See generally* 599 U.S. at 476-92. The Court did not discuss what makes a § 2255 motion second or successive in the first place. *See id.* at 469-71. The Government notes that Justice Thomas, who wrote *Jones*, had dissented in *Panetti* and expressed there that "the phrase 'second or successive' mean[s] . . . any subsequent federal habeas application." *See* 551 U.S. at 964 (Thomas, J., dissenting). But it does not follow, as the Government concludes, that *Jones* implicitly adopted Justice Thomas's *Panetti* dissent through shared authorship alone. Besides, Justice Thomas also wrote *Magwood*, where the Court concluded that a prisoner's second-in-time application was not second or successive. *See* 561 U.S. at 342.

-7-

In *Rivers*, the Court focused on whether a prisoner's second-in-time application is second or successive if the prisoner's initial application is still on appeal. *See* 605 U.S. at 454-57. True, as the Government emphasizes, *Rivers* asserted that a "second-in-time application can only proceed" if it satisfies AEDPA's restrictions on second or successive applications. *See id.* at 450. But "the language of an opinion is not always to be parsed as though we were dealing with the language of a statute." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 373 (2023) (citation modified). Instead, it "must be read with a careful eye to context." *Id.* at 374. In context, *Rivers*'s broad assertion was not absolute. To wit, *Rivers* later discussed certain exceptions where a second-in-time motion would not be second or successive. *See* 605 U.S. at 453-54 (discussing amended habeas petitions filed before a judgment and motions filed under Fed. R. Civ. P. 59(e)). And contrary to the Government's conclusion, *Rivers* did not suggest that these are the *only* such exceptions. *Rivers* also offered the more flexible holding that "[o]nce the judgment has been entered with respect to the initial habeas petition, a second-in-time filing that makes new habeas claims *generally* qualifies as a second or successive petition." 605 U.S. at 457 (emphasis added). *Rivers* thus does not reject the Court's previous exceptions to the general rule that second-in-time motions are second or successive.

Finally, the fact that the second-in-time applications in *Jones* and *Rivers* were second or successive does not mean that Lozano's must be also. *Jones* and *Rivers* never discussed whether the prisoners' claims in those cases, unlike Lozano's here, had already arisen when the prisoners filed their earlier applications. *See* 599 U.S. at 469-71; 605 U.S. at 452-59. Even if the Government were correct that *Jones* and *Rivers* "appear[ed] to rest on reasons rejected in some other line of decisions," we would still "follow the case which directly controls, leaving to [the] Court the prerogative of overruling its own decisions." *See Agostini v. Felton*, 521 U.S. 203, 237 (1997). Adhering to the Supreme Court's directly controlling precedent, we recite our familiar refrain that a § 2255 motion containing a newly arisen claim, like Lozano's motion, is not second or successive. *See Sellner*, 773 F.3d at 930-31.

**B.**

Although we disagree with the district court's determination that Lozano's § 2255 motion is second or successive, we nonetheless agree with the district court's decision to deny his motion. Because the district court denied Lozano's § 2255 motion without an evidentiary hearing, we affirm only if our *de novo* review persuades us that "the motion and the files and records of the case conclusively show that [Lozano] is entitled to no relief." *See Holloway v. United States*, 960 F.2d 1348, 1351 (8th Cir. 1992). Here, Lozano claims that because Missouri set aside his prior marijuana conviction, the conviction should not have counted towards his career-offender designation under the guidelines. But as the district court recognized, that simply is not true.

The guidelines prescribe which of a defendant's prior convictions count towards whether that defendant should be designated as a career offender. *See* U.S.S.G. §§ 4A1.2; 4B1.1(a); 4B1.2 cmt. n.3. In relevant part, § 4A1.2, cmt. n.10 (the "Application Note") instructs that convictions "set aside or . . . pardoned for reasons unrelated to innocence or errors of law . . . are to be counted" towards a career-offender designation. *See* § 4A1.2, cmt. n.10. The Application Note adds: "However, expunged convictions are not counted." *See id.* (citing § 4A1.2(j)).

"[T]he Guidelines do not expressly define the term 'expunged.'" *United States v. Townsend*, 408 F.3d 1020, 1023 (8th Cir. 2005). But we have observed that "when determining whether a conviction is 'expunged' under the guidelines, a court must examine the 'basis' for the expunction." *Id.* at 1024; *see also id.* ("[A] state's use of the term 'expunge' is not controlling in determining whether a conviction is properly included in calculating a defendant's criminal history category."). In *Townsend*, we drew on language from elsewhere in § 4A1.2 to define expunged convictions—for guidelines purposes—as those: "(1) reversed or vacated due to legal errors or later-discovered evidence exonerating the defendant, or (2) ruled constitutionally invalid." *See id.* at 1023 (citing § 4A1.2, cmt. n.6).

Lozano argues that under *Townsend*'s definition of expunged convictions, his prior marijuana conviction was expunged and that the conviction therefore should not count towards his career offender designation. This argument confronts an immediate obstacle: "the obvious purpose" behind Missouri's decision to set aside his conviction was "to give a defendant a fresh start, not to correct errors of law or vindicate innocence." *See United States v. Dubovsky*, 279 F.3d 5, 10 (1st Cir. 2002) (citation modified). Indeed, Lozano conceded at oral argument that Missouri's reasons for setting aside his prior conviction were unrelated to legal error or innocence. And so, Lozano argues that his conviction was expunged because it was "ruled constitutionally invalid"—first by the people of Missouri, who ratified the Amendment, and then by a Missouri court, which vacated his conviction pursuant to the Amendment.

But Lozano stretches the meaning of constitutional invalidity beyond what *Townsend* and the guidelines' plain language can bear. Constitutional invalidity, in this context, refers to constitutional *error*—a type of legal error. Although expunged convictions do not count towards a defendant's criminal history, we "[n]evertheless . . . must" count convictions set aside for reasons unrelated to innocence or errors of law. *See United States v. Martinez-Cortez*, 354 F.3d 830, 832 (8th Cir. 2004). *Townsend* did not carve an exception into this rule for convictions set aside by state constitutions. Instead, "*Townsend* is consistent with the vast majority of circuit court decisions that considered this issue and concluded that, 'expungement within the meaning of the Guidelines's structure is best determined by considering whether the conviction was set aside because of innocence or errors of law.'" *See United States v. Nelson*, 589 F.3d 924, 925 (8th Cir. 2009) (quoting *Dubovsky*, 279 F.3d at 8-9).[6]

---

[6]Several circuits have clarified that under the Application Note, expunged convictions do not include those set aside for reasons unrelated to innocence or error of law. *See, e.g.*, *Dubovsky*, 279 F.3d at 8-10; *United States v. Ashburn*, 20 F.3d 1336, 1343 (5th Cir. 1994) *opinion reinstated in part on reh'g*, 38 F.3d 803, 807 (5th Cir. 1994); *United States v. Shor*, 549 F.3d 1075, 1078 (6th Cir. 2008); *United States v. Stowe*, 989 F.2d 261, 263 (7th Cir. 1993); *United States v. Hayden*, 255 F.3d 768, 770-71 (9th Cir. 2001); *United States v. Hines*, 133 F.3d 1360, 1363-65 (10th Cir. 1998); *United States v. McDonald*, 991 F.2d 866, 871 (D.C. Cir. 1993).

Indeed, each case Lozano cites as an example of constitutional invalidity describes an example of constitutional error. In *United States v. Dixon*, 360 F.3d 845 (8th Cir. 2004), a prisoner's prior convictions were constitutionally invalid because a prosecutor had violated the due process clause in obtaining them. *See id.* at 846-47. In *United States v. Williams*, 131 F.4th 652 (8th Cir. 2025), a prisoner's prior convictions were pursuant to a statute that violated the Second Amendment. *See id.* at 659-60. In *United States v. Moore*, No. 99-40436, 1999 WL 1338421 (5th Cir. Dec. 28, 1999), the court analyzed whether a prior conviction violated state and federal prohibitions on double jeopardy. *See id.* at *1 (concluding that it did not). And in *United States v. Tucker*, 404 U.S. 443 (1972), the prior convictions were obtained in violation of the prisoner's right to counsel. *See id.* at 447-48.[7] Conversely, Missouri set aside Lozano's conviction not due to constitutional error, but to give him a fresh start. None of Lozano's cases indicate that his conviction was ruled constitutionally invalid as understood in *Townsend*.

Therefore, Lozano's prior marijuana conviction was not expunged for guidelines purposes, and his claim that he should not have been designated as a career offender under the guidelines is without merit.

### III. Conclusion

For the foregoing reasons, we affirm.[8]

---

[7]Further, *Williams* and *Tucker* did not discuss the guidelines. *See generally*, 131 F.4th at 654-661; 404 U.S. at 443-49.

[8]We grant Lozano's Motion to Supplement the Record. *See* Fed. R. App. P. 10(e)(2)(C). Further, we take judicial notice of the materials contained in the Government's Motion to Supplement the Record, *see Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005), and therefore deny that motion as moot.

KELLY, Circuit Judge, concurring.

I agree Lozano's instant habeas petition is not second or successive, and thus, concur in Part A. I also concur in Part B, but only because precedent binds us to the result.

According to the Guidelines, "[s]entences for expunged convictions are not counted[.]" USSG § 4A1.2(j) (Nov. 2024). As the court notes, the Guidelines do not define "expunged." We have said, however, that expunged convictions "appear to be those (1) reversed or vacated due to legal errors or later-discovered evidence exonerating the defendant, or (2) ruling constitutionally invalid." Townsend, 408 F.3d at 1023 (citing USSG § 4A1.2, comment. (n.6)).

But this language comes from the Guidelines commentary addressing a specific set of prior sentences: sentences resulting from "Reversed, Vacated, or Invalidated Convictions." USSG § 4A1.2, comment. (n.6) ("Sentences resulting from convictions that (A) have been reversed or vacated because of errors of law or because of subsequently discovered evidence exonerating the defendant, or (B) have been ruled constitutionally invalid in a prior case are not to be counted."). Commentary note 6 says nothing about "expunged convictions."

Instead, § 4A1.2 carves out "expunged convictions" as a distinct category in the Guidelines provision itself. USSG § 4A1.2(j) ("Sentences for expunged convictions are not counted, but may be considered under [§] 4A1.3 (Departures Based on Inadequacy of Criminal History Category (Policy Statement))."). Nothing in the Guidelines gives "expunged convictions" the same definition assigned to "Reversed, Vacated, or Invalidated Convictions." See United States v. Johnson, 703 F.3d 464, 468 (8th Cir. 2013) ("We also consider the presumption against surplusage to be decisive. It is a 'cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute.'" (quoting Williams v. Taylor, 529 U.S. 362, 404 (2000))).

-12-

There is also separate commentary about "Convictions Set Aside or Defendant Pardoned." USSG § 4A1.2, comment. (n.10) ("A number of jurisdictions have various procedures pursuant to which previous convictions may be set aside or the defendant may be pardoned for reasons unrelated to innocence or errors of law, *e.g.*, in order to restore civil rights or to remove the stigma associated with a criminal conviction. Sentences resulting from such convictions are to be counted."). This commentary acknowledges the various procedures by which a "conviction[] may be set aside" or a "defendant may be pardoned for reasons unrelated to innocence or errors of law." Id. Sentences from these types of convictions do count in the calculation of a person's criminal history under the Guidelines. But commentary note 10 expressly repeats that "expunged convictions" do not. Id. ("However, expunged convictions are not counted. § 4A1.2(j)."). And commentary note 10 does not define "expunged convictions" as only those listed in commentary note 6. Indeed, it does not reference note 6 at all.

In my view, this case highlights the problem with not giving "expunged convictions" its own definition in the Guidelines. Missouri has declared, by state constitutional amendment, that many activities related to marijuana "are not unlawful and shall not be an offense under state law[.]" Mo. Const. Art. XIV § 2.10(1). The Amendment also directed the state to "order the expungement" of many prior marijuana-related convictions. Id. § 2.10(8)(a). Pursuant to this directive, Lozano's prior marijuana conviction was vacated and expunged. According to the Amendment, Lozano is thus "restore[d] . . . to the status [he] occupied prior to" his conviction, he is no longer "required to acknowledge" the prior conviction, and he "may deny the existence of the record [of the conviction]." Id. § 2.10(8)(c). In addition, the state court was required to "issue an order to expunge all records and files related to the arrest, citation, investigation, charge, adjudication of guilt, criminal proceedings, and probation related to [Lozano's] sentence." Id. § 2.10(8)(b).

The expungement of Lozano's prior conviction may not have been related to innocence, error of law, exoneration based on later-discovered evidence, or federal

-13-

constitutional invalidity. But it is difficult to characterize it as anything other than an "expunged conviction." <u>See</u> <u>Expunge</u>, Black's Law Dictionary (12th ed. 2024) ("To remove from a record, list, or book; to erase or destroy[.]"). If not for <u>Townsend</u>, I would conclude that it is.

_____